### EASTERN TEXAS R. CO. v. DANIEL & BURTON.

(Court of Civil Appeals of Texas. Dec. 3, 1910. Rehearing Denied Jan. 5, 1911.)

1. EVIDENCE (§ 317*)—HEARSAY.

On a claim against a carrier for damages for depreciation in value of two car loads of cotton seed by delay, testimony of a witness that he weighed practically all the seed, with a statement of the weight of each car load, was not hearsay, though he also testified that sometimes a clerk would weigh a wagon load of the seed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

2. EVIDENCE (§ 318*)—HEARSAY.

In a suit against a carrier for damages by delay in a shipment of cotton seed, testimony of a witness for plaintiff, as to the weight of the seed at its destination, based entirely on accounts of sales, was hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1193–1200; Dec. Dig. § 318.*]

3. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—HEARSAY—EVIDENCE OF FACTS OTHERWISE PROVEN.

Error in permitting hearsay evidence of weights of goods was harmless, where accounts of sales showing the weights were introduced in evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

4. CARRIERS (§ 104*)—DELAY IN DELIVERY—EVIDENCE.

In an action against a carrier for delay in delivery of shipments which the consignor or-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

dered diverted from its original destination, evidence *held* to show that the delay was not from any fault of the consignor in failing to deliver original bills of lading in ordering the diversion.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 104.*]

Appeal from Angelina County Court; E. Winfree, Judge.

Action by Daniel & Burton against the Eastern Texas Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Mantooth & Collins, for appellant. Adams & Young, for appellee.

McMEANS, J. Daniel & Burton sued the Eastern Texas Railroad Company to recover damages growing out of a shipment of two car loads of cotton seed from Kennard in Houston county to Nacogdoches, over the roads of appellant and the Houston East & West Texas Railway Company. Appellees alleged that before the cars reached their destination they requested appellant, and appellant agreed, to divert the shipments, forwarding one of the cars to Crockett and the other to Houston, but that appellant failed and refused to comply with said agreement, but carried the cars on to Nacogdoches whereby the shipments were delayed from October 23 and 24, 1907, to December 24, 1907, causing damages to appellees as follows: (1) By decline in price of cotton seed, between the dates mentioned, of $5 per ton. (2) By demurrage charges accrued during the time of the delay, which appellees were compelled to pay. (3) By loss of weight of the seed during said period owing to the drying out and shrinkage of the seed. They further claimed damages by reason of the failure of appellant to construct a side track or switch to appellees' seedhouse, as it agreed to do, from July 4, 1907, to October 17, 1907, whereby appellees were prevented from shipping a car of seed which it had contracted to sell at $20 per ton and which they afterwards had to sell for $3 per ton less. They also claimed a further item of damage amounting to $34, which was not allowed by the court and no further mention of which need be made. Appellant answered by general denial and specially pleaded that it received the two cars of cotton seed on the 23d and 24th days of October, 1907, at Kennard and transported the same with dispatch and delivered them to the Houston East & West Texas Railroad Company, its connecting line, on the 23d and 24th days of October, 1907; that said last-named carrier transported said cars to Nacogdoches and tendered them to the consignee on October 28, and November 1, 1907, respectively; that there was no delay or default on the part of appellant, for that it was not bound under the law to divert the shipment of said seed from Kennard or Lufkin or Nacogdoches to Crockett or Houston; that, if it was its duty to divert said cars, it could not do so until appellees had returned the original and duplicate bills of lading delivered to appellees at the time of shipment, requiring shipments to be delivered to the consignee at Nacogdoches; that appellees failed to deliver all of said bills of lading to it until after the two cars of seed had reached Nacogdoches; that after the cars arrived at Nacogdoches appellant's liability as connecting carrier had ceased, and thereafter the Houston East & West Texas Railroad Company demanded the payment of local or additional freight rate for further transportation, which appellees refused to pay, and for want of such payment the latter company refused to reship the cars as directed by appellees, and which refusal caused the delay, and appellant was not responsible therefor. The case was tried before the court without a jury and resulted in a judgment for appellees. The railroad company has appealed.

The trial judge, upon the request of appellant, reduced to writing and filed his findings of fact and conclusions of law; but, owing to their great length, we will not copy them in this opinion, for to do so would extend it beyond all reasonable bounds. At a former day of this term this court rendered its decision, affirming the judgment of the court below in an oral opinion. Counsel for appellant has since then requested us to reduce our opinion to writing, and out of deference to him we shall now do so, although we are not required by law to prepare and file written opinions in cases of affirmance where the jurisdiction of this court is final.

Appellant's first assignment of error is as follows: "The court erred in permitting the witness I. A. Daniel to testify about how much each of the cars of seed weighed at the time they were loaded at Kennard, because he did not see the cars weighed, as shown by bill of exception No. 3." Under this assignment appellant urges that, the appellees having claimed damages for the lessened value of the cotton seed caused by delay in transporting them, it was incumbent upon them to prove the aggregate weight of the two car loads by legal and not hearsay testimony. The only testimony as to the weight of the two car loads was that of the plaintiff Daniel. He testified: "The first car weighed 34,075 pounds. I weighed practically all the seed bought and which went into the first car of seed. I am sure I weighed at least 75 per cent. of them myself. * * * I think I weighed nearly all of these seed. Sometimes some of the clerks in the store weighed a load of seed now and then, but those first two cars (the cars in question) I think I weighed practically all of them myself. Some of the employés sometimes weigh a load (wagon load), not often. The

first one of these cars weighed 34,075 and the second 32,970 pounds." This is practically all the testimony as to the weight of the seed. We cannot agree with the contention of appellant that the testimony was hearsay. On the contrary, there was an emphatic declaration by Daniel of the weight of each car load, and that declaration remains unchallenged. True it is that he says that some of his clerks may have weighed a wagon load now and then, but that does not detract from the statement made by the witness or negative its truth, in the absence of testimony that such of the wagon loads as were weighed by the clerks were not weighed in his presence, or that he was undertaking to testify to the weights from statements made to him by his employés. If Daniel was testifying in part to the weights upon information given or statements made to him by his clerks, this could have easily been shown upon cross-examination. The assignment is overruled.

Appellant's eleventh and twelfth assignments are as follows:

"The court erred in permitting I. A. Daniel to testify as to the weight of the car of cotton seed sent to Houston as weighed by the Merchants' & Planters' Oil Company, he having testified to said weight from the account sales only, that he received from the Merchants' & Planters' Oil Company and did not know, personally, how much the said car of seed weighed; such testimony being hearsay, as shown by bill of exceptions No. 11."

"The court erred in permitting I. A. Daniel to testify that it was a universal custom of wholesale merchants buying cotton seed by the wholesale to render an account of sales in the form that the account sales was rendered to him by the Merchants' & Planters' Oil Company, and by the Crockett Oil Company, because the testimony was illegal and incompetent, and did not tend to prove any issue in this case, as shown by bill of exceptions No. 12."

These assignments are grouped, and under them appellant presents the following proposition: "Appellee I. A. Daniel having testified that all he knew of the weight of the car of seed as weighed in Houston was what the account of sale of said seed showed, that he did not see the seed weighed and knew nothing of the weight of said seed, except what the account of sales showed, was hearsay evidence and illegal."

The witness testified that he did not see the car of seed weighed in Houston, but that he received returns of the car load, and that he had the account of sales, which showed as follows: "Account Daniel & Burton shows one car K15, weight 31,600 pounds seed; price per ton $12.00." This testimony was objected to by appellant as hearsay, whereupon the witness, in response to questions by the court, further testified: "I am basing my statement in reference to the weight of the car of seed shipped to the Merchants' & Planters' Oil Company of Houston upon their account of sales, the weight they gave me. I think that statement was issued by the Merchants' & Planters' Oil Company; it looks like it. I have had many business transactions with them, and it looks like their signature. It is the custom to render an account sales in that form." Appellant then moved to strike out all the testimony of the witness above quoted on the ground that it was hearsay, which motion was overruled. The testimony was material because the loss to appellee in the difference in the price of the car load between the time it should have reached Houston had it been diverted at the time appellees requested this should be done and the time it did reach Houston, and the loss occasioned by loss of weights could only be determined by the difference in the weights at said times, and, having sufficiently proved the weight at the time of shipment, it was incumbent on appellees to also prove the weight when the car reached Houston. That the testimony offered for that purpose was hearsay and should have been stricken out on appellant's motion seems to admit of no question. Railway v. Birdwell, 86 S. W. 1067; Railway v. Leggett, 86 S. W. 1066; Railway v. Startz, 97 Tex. 167, 77 S. W. 1. The assignments must be sustained. But it does not follow that the refusal of the court to strike out the objectionable testimony was such an error as requires a reversal of the judgment. It is a familiar rule that the appellate courts will not reverse a judgment for an error in admitting illegal testimony, where other evidence to prove the same fact is admitted without objection and is unrebutted. Railway v. Mackie, 71 Tex. 499, 9 S. W. 451, 1 L. R. A. 667, 10 Am. St. Rep. 766; Garcia v. Gray, 67 Tex. 286, 3 S. W. 42; Railway v. Hill, 70 Tex. 54, 7 S. W. 659; Letcher v. Morrison, 79 Tex. 241, 14 S. W. 1010; Wallis v. Schneider, 79 Tex. 481, 15 S. W. 492.

The record discloses that, after the testimony objected to was admitted, the plaintiff introduced in evidence, without objection, the account of sales above referred to showing the weight of the car load at Houston and the price per ton allowed therefor. This rendered the error in admitting the testimony of Daniel harmless.

Appellant groups its seventh, eighth, ninth, and tenth assignments. The seventh complains that the court erred in permitting appellee Daniel to testify that the demurrage charges on the car load was $47.50, which he paid, because the appellant was not required by law to divert the shipment, and the eighth raises practically the same question as to the demurrage on the car load shipped to Crockett; the ninth complains of the findings of fact of the trial judge to the effect that the demurrage charges accrued by reason of the negligent failure of defendant to

divert the cars as it agreed to do; and the tenth complains that the court erred in concluding as a matter of law that the defendant was liable for the demurrage charges. Under these assignments appellant advances the proposition that, the Nacogdoches Oil Company being the consignee under the original contract of shipment, appellant was legally bound to deliver the shipment to the consignee, or have the original and duplicate bills of lading issued by appellant returned to it before the cars could be diverted. The court found as a fact: That one of the cars reached Lufkin, which is the eastern terminus of appellant's railroad, on October 23, 1907, and was shipped from Lufkin over the Houston East & West Texas Railroad on October 26, 1907, and arrived at Nacogdoches on October 28th. That the other reached Lufkin October 31st, and reached Nacogdoches November 1st; that not later than October 26th appellees applied to appellant's agent at Kennard to have the cars diverted, one to Houston and the other to Crockett, and said agent told them that the cars would be so diverted. That thereupon on said date appellees delivered to said agent the original bills of lading and the agent indorsed thereon the following: "Diverted by order of shipper. E. J. Conn, Agent." Appellees then asked the agent "if there was anything else for them to do to secure such diversion," and were told by the agent that "nothing more was necessary, and that the cars would go on to Houston and Crockett all right." That the original bills of lading were immediately returned by the agent to appellees, but the duplicates thereof were left by them with the agent. These findings are not attacked by any assignment of error presented in appellant's brief. It appears therefrom that, when the appellees applied to the agent to secure the diversion, they had with them and delivered to him the original and duplicate bills of lading, and that this was before the cars left Lufkin over the connecting line. The agent returned the originals to the shipper, and retained the duplicates, and immediately telegraphed appellant's superintendent at Lufkin to cause the diversion to be made. The superintendent, also by telegraph, asked the name of the consignee of the car to be diverted to Crockett (the agent having omitted this information in his telegram), and also requested the agent to send the bill of ladings covering the shipment of both cars. The agent, in response to this request, sent in the duplicates which he had retained, and this brought forth the request from the superintendent to send in the originals. There was some delay in securing these, and in the meantime the cars were permitted to go on to Nacogdoches, where they remained until about December 17, 1907, when they were forwarded to their respective destinations.

We think that the above is sufficient to show a delivery and surrender of both the original and duplicate bills of lading to appellant, and meets the objection urged by it in its proposition. The appellees had done all that could be required of them to secure the diversion, had been assured that the diversion would be made, and the mere fact that appellees had in their possession the original bills of lading, after they had surrendered the possession of same to appellant's agent, did not justify a refusal of appellant to make the diversion. The delay which occasioned the demurrage charges was not due to any default upon the part of the shippers, but to the fault of the appellant in not making the diversion as it agreed to do, and the appellees, having been required to pay the demurrage charges to the connecting carrier, were entitled to recover the same of appellant.

We have carefully examined the other propositions subjoined to the assignments under consideration, as well as all the other assignments of error presented by appellant in its brief, and have concluded that there are no reversible errors pointed out in any of them.

The judgment of the court below is affirmed.

Affirmed.