THRIFT & EDWARDS v. HOLLAND et al.*
(No. 5613.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 16, 1916. Rehearing Denied March 15, 1916.)

1. APPEAL AND ERROR ☞1011 — REVIEW — QUESTION OF FACT.

Where the evidence is conflicting and there is evidence to sustain the finding of the trial court, the court on appeal will not disturb the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. ☞1011.]

2. EVIDENCE ☞354(13)—BOOKS OF ACCOUNT.

Entries in books on information received by the witness from third person were not admissible in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1457, 1458; Dec. Dig. ☞354(13).]

Appeal from District Court, Victoria County; John M. Green, Judge.

Action by C. S. E. Holland and another against Thrift & Edwards. From a judg-

ment for plaintiffs, the defendant appeals. Affirmed.

Emmett B. Cocke, of San Antonio, for appellant. Fly & Ragsdale and Proctor, Vandenberge, Crain & Mitchell, all of Victoria, for appellees.

CARL, J. Appellee C. S. E. Holland brought suit against appellants on an assigned account which it was alleged had accrued in favor of Welder & Rathbone Company. The latter company was made a party on the allegation that it had guaranteed the account.

It is alleged that during the cotton market season of 1912 Welder & Rathbone Company, on various dates, had purchased cotton from appellants under an assignment at the beginning of the season substantially as follows: The cotton was to be shipped to Victoria or Galveston, same to be delivered by appellants f. o. b. cars at points of shipment and consigned to Welder & Rathbone Company, either at Victoria or Galveston, and that the weights and classification to be used in determining the amount to be paid for said cotton should be the weight at Victoria or Galveston, as the case might be, as determined by Welder & Rathbone Company, and the classification at said respective points as the same was determined to be by Welder & Rathbone Company; that appellants, under said agreement, shipped to Welder & Rathbone Company during the season various shipments of cotton, some to Victoria and some to Galveston, and which, based on weights and classifications at said respective points, aggregated in value $229,607.44; that in the instance of each shipment, appellants drew or caused to be drawn a draft upon Welder & Rathbone Company in payment of said particular shipment, and that each and all of said drafts were presented to and paid by said Welder & Rathbone Company; that the aggregate of said drafts was $231,088.15, or $1,480.71 in excess of the contract value of the cotton actually shipped by appellants and received by appellee Welder & Rathbone Company, which said overpayment was not discovered until the close of the cotton season. The drafts, with the dates upon which same were drawn together with the amount of each, the number of bales of cotton for which such drafts were in payment, etc., were set forth in exhibits to the petition; and, further, the transfer of the account was alleged, etc.

Appellants answered by general denial and special pleas, but asked no affirmative relief. It was alleged that C. S. E. Holland was not the bona fide owner of the claim sued on, and that J. J. Welder, H. E. Rathbone, and A. W. Turner were the real owners of the claim; and estoppel was pleaded against the parties because it is claimed Welder & Rathbone Company furnished the defendants what are called "out turns" on the first shipment or two, and they showed an increase in weight and classification, and the Welder & Rathbone Company was repeatedly notified, both verbally and in writing, to notify the defendants promptly should there be any loss of weight or failure of the classification as made by the defendants, so that defendants might take proper steps to reimburse themselves from those selling them the cotton while the matter was fresh and the true facts might be ascertained. They say Welder & Rathbone Company failed to do this, although often requested so to do, except as to the first one, two, or three shipments. On the contrary, it is asserted that the only claim made by A. W. Turner, with whom defendants had their dealings with the Welder & Rathbone Company, was for failure to fill a certain order of something over 200 bales of cotton, and defendants allege that Turner often told them that he had gotten behind with his "out turns," but knew all the cotton they were shipping was showing better weights and grades than defendants had shipped on and would show nice profits. They say they relied on these statements of Turner, and the plaintiffs are estopped now to deny that the weights and grades did come up to those made by defendants in their shipments.

There was a plea of privilege, but it is unnecessary to discuss same, as the record comes to us.

The trial was before the court without a jury, and judgment was entered in favor of Holland against Thrift & Edwards and against Welder & Rathbone Company in the sum of $1,480.71, the amount sued for, together with interest, and Welder & Rathbone Company were given judgment over against Thrift & Edwards for $1,341.85 of said amount. The judgment finds that Welder & Rathbone Company were guarantors of the claim, and execution is first directed against Thrift & Edwards. Thrift & Edwards alone have appealed.

[1] The first assignment is that the judgment is contrary to law, because it clearly appears from the evidence that plaintiff failed to make out a case for the reason that, under the contract between Thrift & Edwards and the firm of Welder & Rathbone Company, Victoria Compress weights and classes of the various bales of cotton as determined by Welder & Rathbone Company should govern, and there is no evidence as to the classes of said cotton, or enough evidence to support a judgment against appellants. Turner testified that every bale of the cotton involved was shipped to Victoria and was classed by him in person at Victoria, and under the contract he or his firm was to do the grading and his grading was to govern; and when the cotton was shipped to Galveston, the classifications were made by their representatives. Turner identified each draft and explained how he arrived at the prices and classification of the cotton covered by each

particular draft. Magee, Welder & Rathbone's weigher, weighed all the cotton and verified the weight sheets, and it is in evidence that there was no compress weigher. Turner testified to these matters while on the stand and reviewed his calculations while so testifying. The weight sheets were introduced upon which the weight of each bale was given. Turner's testimony showed the aggregate of the weight sheets, based upon the aggregate of the weights, etc. But under this assignment appellants apparently attempt to challenge the admission of certain testimony. The evidence, in its most favorable light to appellants, was conflicting, and where there is evidence to sustain the finding of the trial court, we would not disturb the judgment on that account. The assignment is overruled.

The matters complained of in the second assignment cannot be sustained, because there was ample testimony to support the judgment of the court. What a certain shipment or two to Galveston weighed and classed would not overcome positive testimony as to weights and grades given on the witness stand as to the cotton in controversy, especially since the market is susceptible to variation during the season. What Thrift & Edwards paid for the cotton would be no inconsiderable factor in determining whether they made a profit on it, and the simple fact that they sold some in Galveston on which they made about $1,000 profit, would not determine whether they made a profit on other shipments even at the same time. The assignment is overruled.

Turner denies that he made any representations, such as advising appellants that the weights and classifications of the Victoria cotton were holding up all right, and that same would show a gain to them. Turner admits seeing a notation on some of the cotton papers to notify Thrift & Edwards if the weights and grades were not correct. He says they made such requests in some particular instances. He got behind with his "out turns," but explains that the lists came attached to a draft, sent through appellant's local bank. He says that in one or two instances appellants called him up and asked about weights and grades of cotton from certain points of shipment. He says substantially that he examined the lists if he had time after the drafts were paid, but on account of pressure of work got behind and does not recall. He says he did not know that it was important to Thrift & Edwards to make prompt report on these matters, but says that when these inquiries were made, he gave the information desired. That clearly creates an issue in the testimony, and the trial court's finding would be final, even where appellants' testimony is as strong as it is the other way. The assignment is overruled.

[2] Thrift testified that the entries in his books, as to weights and grades of shipments, were made largely from information furnished him over the telephone and by other parties. Such entries as the witness made himself or knew of his own knowledge, were not excluded, but only such as came to him from third persons. The fourth assignment is overruled, and the judgment is affirmed.