**FREUND v. HANSON'S SONS, Inc.**
**(No. 7736.)**

(Court of Civil Appeals of Texas. Galveston.
June 3, 1919.)

1. SALES ⟐⟐71(2)—UNDER CONTRACT TO BUY
AT PRICE PER CUBIC YARD "WHARF G.," BUY-
ER LIABLE FOR MEASUREMENT AT G.

Under contract to buy mud shell at speci-
fied price per cubic yard "f. o. b. cars wharf
Galveston," buyer is liable for quantity placed
on board cars at wharf at Galveston, regardless
of quantity at point of destination, which quan-
tity may be shown by competent evidence of
ascertainment thereof at wharf at Galveston,
or by evidence of measurement at point of des-
tination, and that none of the shell was lost in
transit.

2. EVIDENCE ⟐⟐318(6)—EXPENSE BOOKS FUR-
NISHED BUYER BY RAILROAD INADMISSIBLE
WITHOUT EVIDENCE OF CORRECTNESS.

In seller's action for balance of price, in-
volving dispute as to quantity sold, books of
seller, into which bookkeeper had entered
weights of quantity sold from expense bills
furnished buyer by railroad, and sent to seller
by buyer, without any evidence as to their
correctness, *held* hearsay and inadmissible,
where there was no testimony that weights were
correct, and where it appeared that some of the
weights were only estimates of railway em-
ployé.

3. SALES ⟐⟐181(13) — IN ACTION FOR PRICE,
EVIDENCE INSUFFICIENT TO SHOW BUYER AC-
CEPTED SELLER'S MEASUREMENTS.

In action for balance of price of mud shells,
bought under a contract to purchase mud shells
at specified price per cubic yard, involving dis-
pute as to quantity purchased, and involving
competency of seller's records of quantity show-
ing the weight. finding that buyer made no objec-
tion to bills rendered on yardage ascertained by
weight *held* against evidence.

Appeal from Galveston County Court; Geo.
E. Mann, Judge.

Suit by Hanson's Sons, Incorporated,
against Frank Freund. Judgment for plain-
tiff, and defendant appeals. Reversed and
remanded.

C. G. Dibrell and McDonald & Wayman, all
of Galveston, for appellant.

Marsene Johnson, Elmo Johnson, Roy
Johnson, and Marsene Johnson, Jr., all of
Galveston, for appellee.

LANE, J. This suit was instituted by
Hanson's Sons, a corporation, against Frank
Freund, to recover the sum of $795.63, al-
leged to be a balance due for certain shell
delivered by appellee to appellant upon the
contract hereinafter set out. The defendant
in the court below answered:

First, by excepting specially to the plain-
tiffs' petition, and says that it appears there-
from that the debt sued for and each item

thereof was barred by the statute of limita-
tions.

Second, by general denial.

Third, that if he was ever indebted to
plaintiff in any sum of money it was paid
and discharged by a certain contract made
and entered into on the 14th day of February,
1915, said contract being as follows:

"Galveston, February 14, 1915.

"Received from F. Freund nine hundred and
⁰⁰/₁₀₀ dollars in three notes, one for $100.00
due 30 days after date, one for $100.00 due 60
days after date, and one for $700.00 due 90
days after date, same being in full settlement of
Hansons' Sons and Hansons' Sons, Inc., ac-
counts against him up to Dec. 31, 1914, after
deducting his account against said firms in
full up to January 31, 1915.

"$900.00.                      Hanson's Sons, Inc.
                      'Hanson's Sons,
                          "Per M. L. Frost."

Fourth, that if he ever purchased any
shell from plaintiff, such as that mentioned
in plaintiff's petition, it was under and by
virtue of a written contract made on or about
March 14, 1914, same being as follows:

"March 14, 1914.

"Mr. F. Freund, City—Dear Sir: We here-
with beg to confirm sale to you of all mud shell
to be used by you in building the mainland
roads of Galveston county, for which you have
just been awarded contract by commissioners'
court of Galveston county, at the price of for-
ty-five cents (45¢) per cubic yard f. o. b. cars
wharf Galveston at our unloading rigs. Pay-
ments to be made monthly out of estimates re-
ceived by you from county of Galveston. Kind-
ly sign and return one copy of this agreement
for our files and oblige.

"Yours very truly,
          "Hanson's Sons Incorporated,
          "Per P. E. Hanson, President.
"Accepted and confirmed:
      "Frank Freund."

Defendant further avers, in this connec-
tion, that all shell purchased from plaintiff
was under and by virtue of said contract, and
the price at which payment was to be made
was and should have been determined by
measuring the number of cubic yards of such
shell; that is to say, that the amount and
price of said shell should be determined by
measurement, defendant being bound to pay
only at the rate of 45 cents for each 27 cubic
feet. In this connection defendant further
avers that all shell purchased by him from
plaintiff was so measured and settled for,
and that he is not indebted to plaintiff in
any sum of money whatsoever.

By supplemental petition the plaintiff al-
leged as follows:

"The items set out in the exhibit attached
to plaintiff's petition are not barred by the
statute of limitations, because the same are bas-
ed on and grew out of a written contract, and
evidenced by said written contract, of date

March 14, 1914, and the four-year statute of limitations may apply, and that this suit was instituted on December 20, 1917, less than four years after the execution of said written contract.

"The receipt of date February 14, 1915, a copy of which is set out in defendant's first amended answer, is and was merely a receipt to the defendant on the retail shell account, and did not cover, and was not intended to cover, the account concerning which these parties had made a written contract on March 14, 1914.

"Plaintiff admits that the defendant has paid it for the shell delivered to him, said payments being based upon the measurements at the point of delivery; but plaintiff alleges that the defendant owes it for the shell, based upon the measurements and weights as made at Galveston wharf, and not at point of delivery."

The cause was tried by the court without a jury, and judgment was rendered in favor of Hanson's Sons for $795.63, the amount sued for. From this judgment Frank Freund has appealed.

By the first and second assignments it is insisted:

That over the objection and exceptions of appellee, appellee was permitted to introduce in evidence copies from the books of appellee which purported to show the weight of the shell on each car delivered to appellant by appellee; that the admission of such copies was error for the reason that the undisputed evidence shows the entries on the books were made from certain expense bills made out by the railway company which transported said cars of shell; that these expense bills were sent first to appellant, Freund, for payment of freight charges, and then sent by Freund to appellee's office; and that from these bills appellee would copy upon his books the purported weights of the shell shown thereby, and for the further reason that the undisputed evidence showed that neither the bookkeeper of appellee, nor any one else for it, ever weighed or measured the shell, but that the estimate of the number of cubic yards was made entirely from the weights noted in the statements copied from appellee's books, and for the further reason that the undisputed evidence shows that a large portion of the shell was not actually weighed by any one, but was only estimated by some one for the railway company, and for the further reason that there was no evidence by any one to show that any part of said shell was correctly weighed.

Second. That the foregoing evidence was secondary evidence and inadmissible, and aside from such evidence there was no evidence whatever tending to show the number of cubic yards of shell delivered by appellee to appellant, and therefore the court erred in rendering judgment for appellees in any sum whatever.

There is no dispute between the parties as to the place of delivery and price to be paid for the shell fixed by the contract, but the main and controlling question of difference is as to the quantity of shell actually delivered. As shown by the pleadings of plaintiff, it admits that the defendant Freund has paid it for the shell delivered upon measurements made at the point of delivery, but it contends that defendant owed it for the shell based upon weights made at the wharf in Galveston, as shown by the weights entered upon the expense bills made by the railway company and copied therefrom upon plaintiff's books by its bookkeeper, and not at point of delivery. On the other hand, defendant, Freund, contends that the quantity of shell delivered should have been determined by measuring the number of cubic yards of such shell; that is to say, that the quantity of the shell delivered should be determined by actual measurement, whether such measurement be made at the wharf in Galveston or at the point of destination.

[1] We hold, of course, that appellant is under obligation by the terms of the contract to pay appellee 45 cents for each and every cubic yard of shell which was placed on the cars at the wharf at Galveston. It is immaterial however, as to the method used in ascertaining the number of cubic yards of shell so placed on the cars, if such method be one which will in fact show the quantity. If the number of pounds of shell placed on the cars can be shown by competent evidence, and if it can be also shown by such evidence what number of pounds of shell in the same condition as that involved in this suit would constitute one cubic yard of shell, and then, after having such facts shown, the gross number of pounds are divided by the number found to constitute a cubic yard, this, we think, would be sufficient to show the number of cubic yards actually placed on the cars as contemplated under the terms of the contract, and we can see no reason why such method may not be adopted in the present case, provided it can be shown by competent evidence how many pounds of shell were placed on the cars at Galveston.

We also conclude that the number of cubic yards of such shell could be shown by proof that none of the shell was lost in transit and that it was correctly measured at point of destination. We need not, however, pursue this discussion further, as we have reached the conclusion that the evidence objected and excepted to was erroneously admitted and forms no basis for the judgment rendered.

[2] The undisputed evidence shows that the copies from the books of appellee purporting to show the weight of shell on each car shipped to appellant, and which were introduced in evidence over the objection of appellant, were but copies of the weights found on the expense bills furnished by the railroad company to Freund and sent by him to appellee's office. No witness testified that these weights were correct, but, on the other hand, the undisputed evidence shows that they were copied from the expense bills onto appellee's books by its bookkeeper, without any evidence as to their correctness; and the evidence also shows that some of the cars were weighed by some employé of the rail-

way company who was not called as a witness, and that some of these weights were only estimates of such employé. This evidence as to the weight of the shell was clearly hearsay and inadmissible, and aside from it there was no evidence whatever showing the weight of the shell; therefore the first and second assignments are sustained.

By the third assignment it is insisted that the court erred in the following finding:

"Defendant received from the railroads freight and expense bills in duplicate, stating the net weights of shell on each car; some giving exact weight and some carloads approximated."

We think the finding of the court is supported by the undisputed evidence, but we conclude that such finding itself shows that the objection urged to such evidence by appellant should have been sustained.

The fourth, fifth, and sixth assignments are overruled. We think the evidence explaining the receipt set out in the answer of appellant was properly admitted, and we also think the court correctly found under such evidence that the receipt was only prima facie evidence of settlement, but that such prima facie evidence might be rebutted by other evidence.

What we have already said disposes of the seventh assignment.

The court found the following facts:

"There is a material difference in yardage at point of purchase on wharf and at point of destination on roads. A cubic yard of 27 feet will weigh on the wharves from 1,900 to 2,250 pounds, and 2,400 pounds per cubic yard of mud shell is a liberal allowance for yardage by weight."

It is insisted by the eighth assignment that the court erred in so finding. We think the assignment should be sustained. A yard of shell is a yard of shell, no matter where measured. If ascertained by weight, it would no doubt take more pounds to make a cubic yard if the shell were wet when weighed than if it were dry; still there would be no difference in the weight of a yard of shell whether weighed at the point of purchase on the wharf or at point of delivery, if the condition of the shell was the same at both points. While it may be true that the shell in the present case was wet when loaded on the cars at Galveston, and was dry when it reached its destination, there is no evidence showing the condition of the shell when weighed or estimated by the employé of the railway company. At that time it might have been dry, or it might have been wet, so far as the evidence discloses.

However, this discussion is unnecessary, it is evident that the number of cubic yards of shell delivered by appellee to appellant cannot be determined by weight, in the absence of any competent evidence of the gross weight of the shell so delivered.

[3] The ninth assignment complains of the following finding of the court:

"The defendant made no objection to bills rendered on yardage ascertained by weight."

This assignment must be sustained. All the testimony with reference to this matter was as follows:

P. E. Hanson testified:

"I think Mr. Freund paid the bill for the first month, made up in this way, without complaint, but shortly thereafter declined to pay, except for the number of yards which he claimed the county allowed for. Mr. Freund claimed to us that the shell was measured by the county at the places on the mainland where it was unloaded from the cars to be placed on the roads, and said he would only pay for the number of yards the county gave him credit for."

M. L. Frost, a witness for appellee, testified:

"We sent Mr. Freund a monthly statement covering the cars during each month, but he did not make settlement in accordance with the accounts we sent, but made payments on what he claimed was the amount of shell the county gave him credit for."

Frank Freund, appellant, testified:

"Shortly after plaintiff began to deliver shell under this contract, a dispute arose between plaintiff and myself as to the amount of shell they were delivering. Mr. Hanson claimed more yardage, based on weights shown on expense bills rendered by the railroad company, than the number of yards for which I was allowed by the county on measurement made when the cars were unloaded. I refused to pay, except on these latter measurements, as I figured that the contract meant a yard by the measurement and not by weight."

Sam B. Freund, a witness for appellant, testified:

"I knew that they were claiming that we owed them more, based on the weight of the shell, but we never did pay them except on the measurements made by the county. We declined to pay on any other basis. This dispute came up just after the first month's shell bill was sent to us."

For the reasons pointed out, the judgment of the trial court is reversed, and the cause is remanded.

Reversed and remanded.