**LOCKE et al. v. WALLINGFORD et al.    (No. 2380.)**

(Court of Civil Appeals of Texas. Amarillo. Nov. 5, 1924.)

**1. Evidence ⟝377—Scale tickets inadmissible without proof of their correctness.**

Scale tickets issued by weighers of grain elevator are not admissible as independent evidence of amount of grain weighed, but only when they have been authenticated by proof that they correctly stated facts, and were correctly kept as records.

**2. Evidence ⟝318(1)—Notation on scale tickets made without personal knowledge held hearsay and inadmissible to prove that wheat weighed was grown on a certain section.**

Notations made by bookkeeper on scale tickets that wheat had been grown on a certain section, he having no personal knowledge thereof, but merely information of truck drivers who hauled wheat to elevator, was hearsay and inadmissible to show that wheat was grown on section marked on scale tickets.

**3. Evidence ⬤181—Impossibility of producing best evidence must be shown before books and entries of accounts are admissible.**

The best evidence of which case in its nature is susceptible must be produced by party upon whom burden of proving facts rests, and he must resort to ordinary and even extraordinary means to produce such evidence before books and entries of account are admissible.

**4. Evidence ⬤355(1)—Scale tickets held inadmissible in suit by assignee of farm lease against lessor, when lease did not bind parties to deposit wheat in elevator.**

In action by assignee of lease of farm against lessor, where lease contract did not bind parties to deposit wheat in elevator, and there was no agreement that scale tickets should be issued, or that they could bind parties, such scale tickets were not competent evidence for or against either party.

**5. Evidence ⬤271(18)—Memorandum by deceased lessee held inadmissible as being self-serving declaration.**

In action by assignee of lease of farm against lessor, a memorandum made by lessee, since deceased, stating that certain wheat was sold by lessors, was not within any exception to general rule governing declarations made by parties since deceased, and, being a self-serving declaration, was not admissible against lessors.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by R. I. Wallingford and another against Newt Locke and another. From judgment for plaintiffs, defendants appeal. Reversed and remanded.

Reeder & Reeder, of Amarillo, for appellants.

Barrett & Works, of Amarillo, for appellees.

HALL, C. J. Roberts-Troxell Machinery Company, a partnership composed of George L. Roberts and J. A. Troxell, leased a certain farm for the year 1921 from Newt Locke and C. C. Stockstill. The appellees, R. I. Wallingford and A. C. Dunlop, as the assignees of Roberts-Troxell Machinery Company, filed this suit against the appellants, alleging the lease of said land by Roberts-Troxell Company, and that said company cultivated and harvested a crop of wheat from the leased premises; that under the lease contract appellants were entitled to one-fourth of all the wheat grown upon the said land delivered in the stack or shock, one-fourth of the threshing expenses to be paid by the defendants; that 11,400 bushels of wheat were grown upon the leased premises during said year of which amount defendants were entitled to 2,850 bushels, subject to the payment by them of their one-fourth of threshing expenses; that, in addition to said rent, the defendants took possession of and converted 756 bushels of wheat more than belonged to them, which at that time was worth $1 per bushel. Plaintiffs further allege that their assignors paid the expenses of threshing the entire wheat crop, for which the defendants owed them for threshing their one-fourth interest at the rate of 10 cents per bushel, or $285; that said wheat crop was harvested, threshed, and disposed of during the months of July and August, 1921, and that at the special instance and request of defendants plaintiffs' assignors furnished and used for them, in harvesting said grain and other work, a tractor for 21½ days, for which defendants agreed to pay $40 per day, or $860, and also agreed to pay the wages of a capable man who operated the said tractor for said time at $7 per day, or total wages of $150.50; that during the fall of 1921 plaintiffs' assignors, in accordance with an agreement between the parties, plowed and prepared for planting 232 acres of land at an agreed price of $2.25 per acre, or $522 total; that during the harvest season of said year defendants harvested for plaintiffs assignors, by using a combine harvester, 135 acres of wheat at the agreed price of $4 per acre, aggregating $540; that the defendants paid for fuel used in doing said work $163.83, and furnished three 3-foot extensions for said harvester at an agreed price of $150, making a total credit of $853.84, to which defendants are entitled, leaving a balance of $1,590.26 due and owing by defendants to plaintiffs' assignors on or before October 1, 1921, together with interest. It is alleged that Roberts died intestate in March, 1922, and that afterwards Troxell, as the surviving member of the firm, conveyed for a valuable consideration all of the right, title, and interest in said partnership to the appellees, Wallingford and Dunlop.

Locke and Stockstill answered by general demurrer and general denial, and specially alleged in substance that there was grown on said section of land for the year 1921, 12,208 bushels of wheat; that George L. Roberts received and sold for his own account 7,800 bushels, and retained for his own use as seed wheat 1,280 bushels, and that appellants received and sold for their account 3,128 bushels, being 76 bushels more than their one-fourth of the crop to which they were entitled as rents; that the appellants used a tractor belonging to Roberts for 21½ days, at an agreed price of $20 per day; that Roberts contracted to plow 320 acres of land at $1.75 per acre, and did plow and break 174.5 acres, and no more; that the appellants, using a combine, cut 237 acres of wheat for Roberts, at an agreed price of $5 per acre, and at the request of Roberts appellants paid the Pierce Oil Corporation for him $163.83; that appellants sold Roberts oil and gasoline of the value of $460.81, and also three 3-foot extensions for combine at an

agreed price of $150; that the defendants were, by reason of all the transactions and agreements, due the appellants' assignor Roberts the following items: 76 bushels of wheat, at $1 per bushel, $76; 3,052 bushels of wheat threshed for defendants by Roberts, at $.10 per bushel, $305.20; for use of tractor belonging to Roberts 21½ days, at the agreed price of $20 per day, $430; breaking 174.5 acres of land by Roberts, at the agreed price of $1.75 per acre, $305.35—or a total sum of $1,116.55; that in virtue of the same transactions the assignors of the appellees are due the appellants $1,185 for cutting and threshing with a combine harvester 233 acres of wheat at the agreed price of $5 per acre, $163.83 which the appellants paid the Pierce Oil Corporation at the request, and for the benefit of Roberts, $60.81 for lubricating oil and gasoline sold and delivered to Roberts by appellants, three 3-foot extensions for separator sold and delivered by defendants to Roberts at the agreed price of $150—the total amount due by appellees' assignors to defendants being $1,559.64. Wherefore there is due the appellants a balance of $443.09.

The case was submitted to the jury upon special issues which, with the answers thereto, are as follows:

"No. 1. How much wheat was harvested in the summer of 1921 from the section of land involved in this suit? Answer: 10,358 bushels.

"No. 2. How much of the wheat harvested from said section of land did George L. Roberts sell and use? Answer: 7,230 bushels.

"No. 3. How much of the wheat harvested from said land did defendants Locke and Stockstill get? Answer: 3,128 bushels.

"No. 4. What was the price per day agreed to be charged and paid for the use of the Roberts tractor in harvesting wheat by defendants during the summer of 1921? Answer: $40 per day.

"No. 5. How much land did Roberts break or have broken for defendants during the fall of 1921? Answer: 217 acres.

"No. 6. How many acres of Roberts' wheat was harvested by defendants' combine during the season of 1921? Answer: 185 acres.

"No. 7. What wages per day did defendants agree to pay a man to run the Roberts tractor? Answer: $7 per day.

"No. 8. Did George L. Roberts act for the partnership of Roberts-Troxell Machinery Company in the transactions with defendants involved in this suit? Answer: Yes."

Based upon the verdict, the court rendered a judgment for the appellees Wallingford and Dunlop, against the appellants, Locke and Stockstill, for the sum of $1,054.91, and interest at 6 per cent. from the 12th day of March, 1924. The first assignment of error is based upon the court's action in admitting in evidence 71 scale tickets; these tickets were upon blank forms bearing the heading "Great West Mill & Elevator Company"; they were in the usual form, differing only as to numbers, dates, and the gross tare and net weights; 42 of them were signed "J. P. Hodges, Weigher," and 29 were signed "Ted Ratcliff, Weigher." The names of various parties were written upon the backs of the tickets. The 71 tickets showed that an aggregate of 6,253 bushels of wheat had been weighed by Hodges and Ratcliff. The bill of exception taken to the admission in evidence of these tickets shows that while the witness William H. Chase was upon the stand, he testified with reference to them; that he first saw the tickets in the office of Roberts-Troxell Machinery Company during the crop season of 1921. The substance of his testimony with reference to the origin, purpose, and effect of the tickets is that trucks hauling wheat from the farms to the elevator would go out to the farms in the morning and haul whatever loads they brought to town, and that the truck drivers would bring the tickets in to him, as the bookkeeper of Roberts-Troxell Company in the evening. He stated that he marked at the top of each ticket where the wheat came from, and that the word "Nabors" found written in the right-hand corner of the tickets was in his handwriting; that the word "Nabors" was on all of the tickets, except the tickets which represented the wheat hauled by Frank Hays; that he knew the tickets upon which he had written the word "Nabors" represented wheat raised upon the Nabors section, the land in controversy, because the truck drivers who brought him the tickets, and who signed their names upon the tickets, respectively, told him that the wheat was from the Nabors section. The witness admittted that wheat was being harvested from other sections at the same time. The tickets that have not the name "Nabors" written on them were hauled by Frank Hays' employees. Hays had the contract to haul wheat; his men hauled it. Hays turned the tickets over to him within a day or two after the hauling was done; that other hauling of wheat from other farms was going on at the time the tickets from the Nabors section were being turned in; that it is hard to tell what names are on two of the tickets. Hays had four different drivers. Hodges and Ratcliff were weighers for the Great West Mill & Elevator Company. The substance of the appellants' objection to the tickets is that they do not show that the wheat which they represent was a part of the wheat in controversy, and are purely hearsay evidence; that they do not show that they were issued by the Great West Mill & Elevator Company; that it is not shown that the wheat in controversy in this suit was weighed by the Elevator Company, or by any one authorized to weigh it, because it is affirmatively shown that the parties who hauled the wheat from the Nabors section, which is the wheat in controversy in this case, including Frank Hays and

the weighers of the Elevator Company, are at this time in Potter county, and in the town of Amarillo, and that if the tickets offered in evidence really represent part of the wheat involved in this suit, such fact can be proven by the parties who actually hauled the wheat and weighed it, and that such witnesses can authenticate the tickets and prove their correctness.

[1] The contention that the scale tickets were not admissible in evidence until they were shown to be correct must be sustained. The tickets were issued by employees of the Elevator Company, and it was shown that Hodges and Ratcliff, the weighers, were still residing in Amarillo at the time of the trial. The evidence of the weighers is better evidence than the scale tickets themselves. No one testified that the tickets correctly showed the pounds of wheat weighed, and since they were issued by a third party they were not admissible in evidence until they had been authenticated by proof that they correctly stated the facts and that as records of the Elevator Company they were correctly kept. The general rule is that scale books kept by a third party cannot be received as independent evidence, but are admissible only in connection with the oral evidence of the weigher, or party who made the entries or kept the books, and where it is not shown that the weigher was dead, or some other sufficient reason is given why he is not offered as a witness, scale tickets or books of account, purporting to have been made or kept by him, are not admissible; they are simply ex parte unsworn statements, and should be excluded as hearsay. Callen v. Collins (Tex. Civ. App.) 135 S. W. 651; Ft. W. & R. G. Ry. Co. v. Cauble, 41 Tex. Civ. App. 348, 91 S. W. 244; St. L. S. W. Railway v. McLeod (Tex. Civ. App.) 115 S. W. 85; East Texas Railway v. Daniel & Burton (Tex. Civ. App.) 133 S. W. 506; Fletcher v. First National Bank (Tex. Civ. App.) 126 S. W. 936; El Paso Grain & M. Co. v. Lawrence (Tex. Civ. App.) 214 S. W. 512; Randle v. Barden (Tex. Civ. App.) 164 S. W. 1063; Baker v. Holman (Tex. Civ. App.) 196 S. W. 728; Freund v. Hanson's Sons (Tex. Civ. App.) 215 S. W. 151; Schaff v. Holmes (Tex. Civ. App.) 215 S. W. 864; P. & S. F. Railway v. Arnett (Tex. Civ. App.) 219 S. W. 232.

[2, 3] Even if the scale tickets had been properly proven, so as to render them admissible in evidence to show the amount of wheat weighed by Hodges and Ratcliff, still they would not have established the fact that the several amounts of wheat were in fact grown upon the Nabors section, nor that the aggregate of wheat represented by them was all of the wheat grown on the Nabors section. These were material issues. Chase had no personal knowledge of the fact that the wheat represented by the tickets which he marked with the word "Nabors," was pro-

265 S.W.—69

duced on that section; he made the notation upon information given by the truck drivers who hauled the wheat to the elevator; the notation was therefore hearsay and inadmissible. Neither of the truck drivers, nor any other witness, was introduced who had actual personal knowledge of the fact that the wheat shown by such tickets was raised on the Nabors section. The best evidence of which the case in its nature is susceptible must be produced by the party upon whom the burden of proving the facts rests, and he must resort to the ordinary, and even extraordinary, means to produce such evidence before books and entries of account are admissible; this is a fundamental rule of evidence. Werbiskie v. McManus, 31 Tex. 116; Townsend v. Coleman, 18 Tex. 418. The question of how much wheat was produced upon the Nabors section during 1921 is not a matter required to be evidenced by writing. Scale tickets which purport to show that a certain amount of wheat was raised upon said section are not the best evidence of that fact. Manifestly the party who raised the wheat, and those who harvested and threshed it, would be best qualified to testify concerning it, and until they are produced, or some valid excuse shown why they are not called as witnesses, a notation by a bookkeeper, made upon information given him by truck drivers, is clearly inadmissible. Thrift & Edwards v. Holland (Tex. Civ. App.) 183 S. W. 1189, and authorities cited above. Also Olive & Stirenberg v. Hester, 63 Tex. 190; Williams v. Deen, 5 Tex. Civ. App. 575, 24 S. W. 536; Texas Glass & P. Co. v. Reese (Tex. Civ. App.) 187 S. W. 721.

Dennis v. Sanger Bros., 15 Tex. Civ. App. 411, 39 S. W. 997, is cited by appellees in support of their contention that the scale tickets were admissible without proof that they correctly stated the facts. In that case it is shown that Sanger Bros. and Dennis were preferred creditors of an insolvent debtor. Other creditors had attached the goods in the hands of the trustee, who filed a claimant's bond with Sanger Bros., Dennis, and other preferred creditors, as sureties. Later these sureties, fearing that they would lose the suit, entered into a mutual contract, whereby it was agreed that Sanger Bros. should buy up the claims of the attaching creditors, and that the sureties who were preferred creditors should each pay Sanger Bros. their pro rata share of the amounts paid for such claims. Sanger Bros. proceeded under the contract, and purchased certain claims, and the suit was brought upon the contract against Dennis for the proportion due from him. Upon the trial the accounts of the attaching creditors, with the transfers thereof to Sanger Bros., and receipts for various sums from the attaching creditors, were offered in evidence by Sanger, and were admitted by the trial court over the objec-

tion of Dennis, the appellant, that the accounts, transfers, and receipts did not prove themselves, were ex parte, and that the signatures to such documents were not proven. The Court of Civil Appeals held that if the execution of the transfers and receipts had been proven, then the documents would have been admissible as prima facie evidence of the fact that Sanger Bros. had bought and paid for the accounts under the rule that "Admissions of strangers, or parties not of record against their interest, are sometimes admissible in evidence," citing Sherman v. Crosby, 11 Johns. (N. Y.) 70. A perusal of the facts in the Dennis-Sanger Case shows that the Sangers purchased the several accounts from the attaching creditors for much less than their face values, so the correctness of the accounts themselves was not a material inquiry. The fact to be proven was that the Sangers had bought the accounts and paid for them as the contract obligated them to do. In the instant case the amount of the wheat grown on the Nabors section is the essential fact to be established. Unsworn ex parte receipts issued by strangers to the record were not competent evidence to prove that fact. In the Dennis Case the purchase of the outstanding accounts by Sanger, regardless of their correctness, was the fact to be established. The accounts, with the transfers thereof, and the written receipts for the money, were parts of res gestæ, or things done under the contract. Sanger Bros. had to allege and prove that they had acquired the accounts and paid for them in accordance with their contract, as a condition precedent to their right to recover from Dennis et al. the proportionate part of such amounts paid by them. The court properly held that, if they had first proven that the transfers and receipts were in fact executed by the attaching creditors, such instruments would then have been prima facie evidence of compliance with the contract. Reference to the Sherman v. Crosby Case, supra, shows that Sherman had given Thomas Crosby written authority to settle a suit then pending between Sherman and one Bennett, and "to adjust all the matters, and pay all the dues and costs," and further agreed "to account with Crosby for all lawful demands on that subject that he should settle." Crosby offered a written receipt, admitted to have been signed by Bennett, reciting that he had received of Crosby $411.33 in full of the judgment and execution in the case. The receipt was objected to by Sherman as being no evidence of payment by Crosby, but that such payment must be shown by the testimony of some witness, and further that it was not sufficient evidence that the amount was actually due Bennett. The receipt was admitted by the trial judge, and his ruling was affirmed by the appellate court, saying:

"The only question made at the trial was whether the receipt was competent evidence of the payment by Crosby. It was proved to have been signed by Bennett, and as Sherman had instructed Crosby to settle the suit against him and pay the demand and costs for him, the receipt of Bennett was prima facie evidence of the demand and payment, and it was not requisite for Crosby to make out in the first instance the legality of Bennett's demand or higher evidence of the payment. Sherman had given the defendant a discretion to adjust the demand and pay the dues and costs, and the adjustment and payment of the sum demanded was sufficient for Crosby, and it lay with Sherman to show some fraud in the adjustment, or some abuse of the discretion."

[4] In the case under consideration it was not alleged or shown that the lease contract between the appellants and appellees' assignors bound the parties to deposit any wheat in an elevator, nor was there any agreement that scale tickets should be issued by any weigher, or which would bind the parties, therefore the scale tickets in question were not parts of the res gestæ under the lease contract, as in the Dennis and Sherman Cases, supra; they therefore come under the general rule that admissions by strangers are not competent evidence for or against either party to a suit. 2 Jones on Ev. (Blue Book) §§ 323, 324.

[5] Over the objections of appellants there was admitted in evidence some figures made by Roberts on the margin of a leaf torn from a journal of John Deere Plow Company, with this notation above the figures: "Wheat sold by Locke and Stockstill." Chase, who was Roberts' bookkeeper, produced this memorandum, and over the objections testified that Roberts gave it to him and said: "Put that with the tickets, it is a record of the Locke and Stockstill matter." It was shown that Roberts died soon after this transaction, that neither of the defendants were present either when the figures were made, or handed to Chase. The memorandum is no part of the res gestæ. They do not come within any exception to the general rule governing declarations made by parties since deceased, and since they are self-serving if made by Roberts, they were not admissible against the appellants. 2 Jones on Ev. (Blue Book) § 235a; 22 C. J. "Evidence," §§ 179, 206; Sparks v. Johnson (Tex. Civ. App.) 235 S. W. 975.

By other propositions it is insisted that the preponderance of the evidence is against certain other findings of the jury. In view of another trial, it would not be proper for us to discuss these contentions.

For the errors pointed out, the judgment is reversed and the cause remanded.