PANHANDLE TELEPHONE & TELEGRAPH COMPANY ET AL. V. KELLOGG
SWITCHBOARD & SUPPLY COMPANY ET AL.

Decided October 22, 1910.

**1.—Mechanic's Lien—Owner and Materialman—Constitution.**

Section 37, article XVI, of the Constitution of 1876, is self-executing and operative as between the owner of the property improved and one furnishing material for making the improvement, and in order for the latter to fix a lien it is not necessary that he should comply with the formalities prescribed by the statute in cases where the rights of a contractor intervene between the owner and a materialman. Doctrine applied.

**2.—Same—Contract—Vendor and Purchaser.**

Contract for the improvement of property considered, and held to indicate that the parties bore to each other the relation of vendor and purchaser, where, by the terms of the sale, the vendor was to make certain stipulated improvements on the thing sold, and hence that the materialman, having made the improvements at the instance of the vendor, had a lien on the property without complying with the formalities required in the case of an intervening contractor.

**3.—Same—Public Service Corporation—Telephone Building.**

No reason exists in the Constitution or statutes why a materialman should not have a lien upon buildings owned and used by public service corporations; in this case a telephone company.

**4.—Chattel Mortgage—Telephone Apparatus—Attachment to Building—
Contract of Sale.**

A chattel mortgage may exist upon telephone apparatus when the same are fastened to the floor, ceiling and walls with bolts and screws and may be removed without injury to the building. And so, when the apparatus are treated by the parties as chattels and a lien reserved in the contract of sale.

**5.—Foreign Corporation—Permit—Right to Sue.**

Where it does not appear on the face of the petition that a plaintiff foreign corporation had no permit to do business in this State, the question can not be raised by exception; in such case the question could only be raised by plea, and the plea must be supported by proof.

**6.—Vendor—Conditional Lien.**

Where a telephone corporation bought another telephone system and in the contract of purchase it was stipulated that the vendor of the latter should have a lien on the property of the corporation to secure the delivery of certain bonds and stocks of the corporation (the agreed consideration for the sale of said system), the lien terminated upon the delivery of the bonds and stocks, and no longer existed to secure the payment of the bonds.

**7.—Vendor—Mechanic's Lien.**

Where a vendor stipulates in the contract of sale that the vendee shall make certain improvements therein, the mechanic's lien fixed upon the property by the vendee in making such improvements will be superior to any lien the vendor might have to secure the purchase money.

Appeal from the District Court of Potter County. Tried below before Hon. J. N. Browning.

*John W. Veale,* for appellant J. E. Nunn.—Appellant Nunn was a lien creditor of the Panhandle Telephone & Telegraph Company in good faith for value paid to the extent of $100,000 secured by prior mortgage

over the contract (chattel mortgage) of the plaintiff Kellogg Switchboard & Supply Company, and under his answer it was the court's duty to instruct the jury to so find, if under the law he was warranted in giving peremptory instruction to the jury.  Berkey & Gay Furniture Co. v. Sherman Hotel Co., 16 S. W., 807.

The court erred in failing and refusing to instruct the jury to find that J. E. Nunn was entitled to a superior lien as against the alleged liens of plaintiff and all defendants, for the amount of his debt, towit: $100,000 or such amount as the facts showed his property (the Amarillo Telephone Exchange) was reasonably worth at the time of its purchase by H. H. Davenport & Company acting for the defendant, the Panhandle Telephone & Telegraph Company, on all property originally owned by him and transferred to said Panhandle Telephone & Telegraph Company.  Land Mort. Bank v. Quanah Hotel Co., 34 S. W., 730; Whitehead v. Methodist Protestant Church, 15 N. J. Eq., 135; Bradley v. Simpson, 93 Ill., 93; Presbyterian Church v. Jevne, 32 Ill., 220.

*Cooper & Stanford,* for appellant, the Panhandle Telephone & Telegraph Co.—The court erred in instructing the jury to find that plaintiff, the Kellogg Switchboard & Supply Company, had a mechanic's lien upon the property of this defendant and in instructing the jury to foreclose same, because, as is shown by the uncontradicted evidence, said plaintiff failed to comply with the statute in such cases made and provided in order to fix a mechanic's lien upon the property of this defendant, who was the owner.  Berry v. McAdams, 55 S. W., 1112; Herring-Hall-Marvin Co. v. Kroeger, 57 S. W., 980; Nichols v. Dixon, 85 S. W., 1051; Nichols v. Dixon, 89 S. W., 765; Padgitt v. Dallas Brick Construction Co., 50 S. W., 1010; American Surety Co. v. San Antonio L. & T. Co., 98 S. W., 404; Fallenwider v. Longmore, 11 S. W., 500; Pool v. Sanford, 52 Texas, 621; Burt v. Parker Co., 77 Texas, 338; Dudley v. Jones, 77 Texas, 69; United States Mex. T. Co. v. Western Supply Co., 109 S. W., 383; Baumgarten v. Mauer, 60 S. W., 451; Slade v. Amarillo L. Co., 93 S. W., 475.

Neither the Constitution nor the statutes of this State provide or authorize the fixing of a mechanic's lien on the property of a public service corporation, such as appellant.  Tyler Tap Ry. Co. v. Driscol, 52 Texas, 13; National Bank of Cleburne v. Gulf, C. & S. F. Ry. Co., 66 S. W., 203; Galveston, H. & H. Ry. Co. v. Cowdrey, 11 Wall (U. S.), 459; United States & Mex. T. Co. v. Western Supply Co., 109 S. W., 382; sec. 39, article XVI, Texas Constitution.

As the second amended original petition of appellee, the Kellogg Switchboard & Supply Company, showed upon its face that said appellee did not sell or contract to sell any material to H. H. Davenport & Company, but did contract to erect, construct and connect the switchboard and apparatus therein described with and fasten same to the real estate belonging to this appellant, thereby said petition and exhibits showing that when said contract was complied with that said switch-

board and apparatus would become fixtures and a part of the realty of this appellant, the court should have sustained this appellant's third special exception to said pleadings. Hutchinson v. Masterson, 46 Texas, 553; Keating Imp. Co. v. Marshall L. & P. Co., 12 S. W., 489; Menger v. Ward, 28 S. W., 821; Union Bank & Trust Co. v. Wolf & Co., 86 S. W., 310; Ice, Light & W. Co. v. Lone Star Eng. Co., 41 S. W., 835; 13 Am. & Eng. Ency. Law (2nd ed.), 627.

The court erred in holding that the plaintiff, the Kellogg Switchboard & Supply Company, was not doing business in the State of Texas in the construction and installation of said switchboard, and that plaintiff therefore was not required to have a permit from the State of Texas in order to maintain this suit. St. Louis E. M. F. P. Co. v. Beilharz, 88 S. W., 512; Barnhardt Bros. v. Morrison, 87 S. W., 376; Ft. Worth, Glass & S. Co. v. Smythe & Co., 128 S. W., 1136; 13 Am. & Eng. Ency. Law, 876.

*Stephens & Miller,* for appellee Kellogg Switchboard & Supply Co.— Said switchboard and telephones were manufactured, sold and delivered to H. H. Davenport & Co. on a credit, under a contract which, in terms, retained the title in the plaintiff until they were paid for, of which all parties had notice, and were installed with the understanding that they were thus subject to chattel mortgage and liable to be disconnected and removed if H. H. Davenport & Co. failed to pay for the same, and that it was the intention and understanding of plaintiff, H. H. Davenport & Co., and the Panhandle Telephone & Telegraph Co. that said switchboard apparatus and telephones were not to become fixtures or a part of the realty until they were paid for, and of all these facts the other defendants had notice in acquiring their rights, if any they had. Willis v. Munger Imp. Cot. Mac. Mfg. Co., 36 S. W., 1010; Anderson v. Creamery Mfg. Co., 67 Pac., 493; Readfield Tel. & Tel. Co. v. Cyr, 49 Atl., 1047; City of Portland v. New England Tel. Co., 68 Atl., 1040; Bowen v. Lansing Wagon Works, 91 Texas, 389; Lyon-Thomas Hardware Co. v. Perry Stove Mfg. Co., 88 Texas, 468.

The court did not err in refusing special charge No. 1, requested by H. H. Davenport & Co. and the Panhandle Telephone & Telegraph Co., because the evidence not only showed beyond dispute that in manufacturing, selling and shipping from Chicago, Ill., to Amarillo, Texas, and there installing the switchboard, and in manufacturing, selling and shipping from Chicago, Ill., to Amarillo, Texas, said telephones, plaintiff was engaged in interstate commerce, and in that only, but also no evidence whatever was offered on the trial of the case to show that the plaintiff had not obtained a permit to do business in Texas. Huff v. Kinloch Paint Co., 110 S. W., 467; Keating Imp. Co. v. Favorite Carriage Co., 35 S. W., 417; Allen v. Tyson-Jones Co., 91 Texas, 22; Miller v. Goodman, 91 Texas, 41; Milan Mfg. Co. v. Gorten, 27 S. W., 971; Davis & Rankin Bld. & Mfg. Co. v. Caigle, 53 S. W., 240; Cooper Mfg. Co. v. Ferguson, 113 U. S., 727.

*Spence, Knight, Baker & Harris,* for appellee Western Electric Company.—The direction of a verdict for appellee Western Electric Company was proper because the undisputed evidence showed that appellee had a lien by force of the Constitution upon the property of the telephone company, in that the merchandise of appellee was sold directly to the owners of the property. Davenport & Co. were in law agents of the corporation, Panhandle Telephone & Telegraph Company, and a sale to them for the corporation was a sale to the corporation. Dougherty-Moss Lumber Co. v. Churchill, 90 S. W., 405; Curtin-Clark Hdw. Co. v. Churchill, 104 S. W., 476; Houston v. Long, 23 S. W., 586; Paulsen v. Manshe, 18 N. E., 275; Pope v. Heckscher, 96 N. Y. Supp., 533; Moore v. Jackson, 49 Cal., 109; Chicago Lumber Co. v. Dillon, 56 Pac., 989; Sheehy v. Fulton, 41 Am. St. Rep., 767; Henderson v. Connolly, 14 N. E., 1; Winslow Bros. Co. v. McCully Stone Mason Co., 69 S. W., 304; Westport L. Co. v. Harris, 110 S. W., 609; Fullmer v. Poust, 26 Atl., 543.

The direction for appellee was proper, because the undisputed evidence shows that there was such identity between H. H. Davenport & Company and the corporation as to make the contracts of one binding upon the other, resulting in the consequence that a sale to Davenport & Company was a sale to the corporation.

The direction for appellee was proper, because the undisputed evidence shows that the corporation after its formation expressly ratified and adopted the contract made between the individual promoters for its benefit, and that the corporation after such act of adoption received the benefits of the contract and retained same, thereby in law making the contract its own contract. York Mfg. Co. v. Brewster, 174 Fed., 566; Davis Imp. Wagon W. Co. v. Davis W. W. Co., 20 Fed., 699; Davis & Rankin v. Vice, 43 N. E., 889; Buie v. Chicago, R. I. & P. Ry. Co., 95 Texas, 51; The Oriental v. Barclay, 41 S. W., 117; Oriental Inv. Co. v. Sline, 41 S. W., 131; Chicago Bldg. Co. v. Talbotton Co., 31 S. E., 809; Streator Ind. Tel. Co. v. Continental T. Co., 75 N. E., 547; Mulvihill v. Vicksburg Ry. Mfg. Co., 40 So., 647; Cook on Corporations (6th ed.), sec. 707, and numerous cases there cited.

*Madden, Trulove & Kimbrough* and *Crane & Crane,* for appellee The North Electric Company of Texas.

*Madden, Trulove & Kimbrough,* for appellees Alfalfa Lumber Company, H. A. Campbell, Morrow-Thomas Hdw. Co., Roscoe Lumber Co., and A. E. Seiguer.

SPEER, Associate Justice.—*Statement of the case.*—Sometime prior to May 14, 1908, the City Council of Amarillo granted to H. H. Davenport & Company, a firm composed of H. H. Davenport and W. W. Taylor, a franchise to install and operate a telephone system in the city of Amarillo, and that company purchased a lot and partly constructed

a building thereon to be used in connection with their telephone system. On April 23, 1908, H. H. Davenport, J. T. Harrison and Mike LeMaster prepared, executed and acknowledged articles of incorporation under the statutes of Arizona for the incorporation of the Panhandle Telephone & Telegraph Company. On May 14, 1908, J. E. Nunn was, and for a long time prior thereto had been, the owner of the Amarillo Telephone Exchange, a telephone system doing business in the city of Amarillo, and on that day he and Davenport & Company entered into the following contract:

"State of Texas,
"County of Potter.

"Know All Men By These Presents: That we, H. H. Davenport & Company, a firm composed of H. H. Davenport and W. W. Taylor, party of the first part, and J. E. Nunn, party of the second part, all of Potter County, Texas, have this day made and entered into the following contract and agreement in duplicate, towit:

"The party of the second part, for and in consideration hereinafter mentioned, doth for himself, his executors and administrators, covenant, promise and agree to sell, transfer and deliver to the party of the first part, their heirs and assigns, all apparatus, franchise rights, privileges, supplies, office fixtures and furniture, and all accessories thereto, now used in operating the telephone exchange of the said J. E. Nunn in Amarillo, Texas, except the building used for business offices, and all poles, wires and construction and accessories thereto now on hand owned and being used by the said Amarillo Telephone Exchange in connecting all instruments in and near said town of Amarillo, Texas, which are using Amarillo as their switching station, except the toll leads from the edge of town, magneto switchboards, terminal racks and arrestors, and instruments used and owned by the said J. E. Nunn in connection with said exchange.

"The party of the first part, for and in consideration of the above covenants and agreements, hereby agree and bind themselves, their executors and administrators, to assign, transfer and deliver to the said party of the second part one hundred thousand dollars in bonds, said bonds drawing six per cent per annum interest, and to be twenty-year gold bonds of the Panhandle Telephone & Telegraph Company, a corporation duly incorporated under the laws of the Territory of Arizona, and to be of date not later than July 1, 1908; and one hundred thousand dollars in shares of the capital stock of the said Panhandle Telephone & Telegraph Company; interest on the bonds to be paid from the date of turning over the plant to the date of the bonds by the Panhandle Telephone & Telegraph Company to the party of the second part; and further agree to add to the said Amarillo Telephone Exchange and apparatus sufficient additions and improvements to make the said telephone exchange a first class one in every respect and of the latest devices, and twelve hundred working telephones; and also to construct and build a

modern three-story brick building, 30x100 feet, on the N. W. corner of Sixth and Taylor Streets in the town of Amarillo, Texas, said building to be used as an exchange building by the Panhandle Telephone & Telegraph Company, unless the Board· of Directors deem it expedient to arrange for other quarters. And for this plant complete the said party of the first part are to receive from the said Panhandle Telephone & Telegraph Company, under a contract to be hereinafter made and entered into, two hundred and twenty-five thousand dollars in the above described bonds, and two hundred and twenty-five thousand dollars of the capital stock above described, which said last amount of bonds will be the full amount of bonds outstanding of an issue of three hundred and thirty thousand dollars in bonds by the said Panhandle Telephone & Telegraph Company, leaving· a balance of one hundred˙ and five thousand dollars in bonds in the treasury of the said last mentioned company.

"The capital stock of the said Panhandle Telephone & Telegraph Company is in the sum of five hundred thousand dollars, and after payment· of the above mentioned capital stock to the said party of the first part there will be remaining in the treasury of the said last mentioned telephone company two hundred and seventy-five thousand dollars of the capital stock.

"It is expressly agreed to and understood that the Panhandle Telephone & Telegraph Company is to give connection to the toll lines belonging to the Amarillo Telephone Exchange and the Northwest Texas Telephone Company, their successors and assigns, and to handle the toll˙ business of the said companies at the rate of commission common in Texas.

"It is also agreed and understood that the following officials shall be elected to hold office the first year, viz., J. E. Nunn, president; W. W. Taylor, vice-president; H. H. Davenport, secretary; M. LeMaster, treasurer; and Horace Gooch, general manager, these five before mentioned to constitute the board of directors for the first year.

"Immediately upon the action of the City Council upon the question of rates, the said second party will transfer by bill of sale to the first party the property above described, at which time and place the said first party will by bill of sale transfer all the property to the Panhandle Telephone & Telegraph Company.

"H. H. Davenport & Company,<br>"by W. W. Taylor.<br>"J. E. Nunn."

On the same day the Panhandle Telephone & Telegraph Company held a meeting of its stockholders and directors, the following officers being present:· J. E. Nunn, president; W. W. Taylor, vice-president; H. H. Davenport, secretary; Mike C. LeMaster, treasurer; and Horace Gooch, general manager (said officers having been elected at a prior meeting of the company in pursuance of the contract above set out), when the foregoing contract between Nunn and Davenport & Company

was ratified in all its terms and stipulations by a resolution duly adopted. On June 15th in pursuance of this contract J. E. Nunn executed a bill of sale conveying to H. H. Davenport & Company all of the property owned by the Amarillo Telephone Exchange, and on the same day H. H. Davenport & Company executed bills of sale conveying to the Panhandle Telephone & Telegraph Company all property, privileges, rights, franchises, etc., owned by them in the city of Amarillo. These instruments were placed in escrow, to be delivered to the respective parties as soon as the Panhandle Telephone & Telegraph Company had obtained a permit from the State of Texas to do business in this State, which permit was duly granted and received by the officers of the company on July 6, 1908, when the above mentioned papers were delivered to the respective parties entitled to them. W. W. Taylor, who held the title to lot 10, block No. 61 of the Glidden & Sanborn Addition, on which was situated the telephone building, had executed a deed of date May 21, 1908, conveying the same to the Panhandle Telephone & Telegraph Company and this was also delivered and filed for record on July 6. In pursuance of their contract to do so, the firm of H. H. Davenport & Company at once entered into contracts with the Kellogg Switchboard & Supply Company and various other parties to this appeal, for the purchase of materials to be used in the work of repairing the Amarillo Telephone Exchange property.

This is a consolidated suit by which the Kellogg Switchboard & Supply Company and North Electric Company as plaintiffs, and the other appellees as interveners, seek judgments against H. H. Davenport & Company and the Panhandle Telephone & Telegraph Company for the contract price of materials used in the reconstruction of the plant thus conveyed to the Panhandle Telephone & Telegraph Company, the Kellogg Switchboard & Supply Company praying for a foreclosure of its chattel mortgage lien, and the other parties seeking a foreclosure of their mechanics' lien.

After the evidence was introduced the court instructed the jury to find for the various appellees herein the amount claimed by each respectively; as to the Kellogg Switchboard & Supply Company, against H. H. Davenport & Company together with a foreclosure of their chattel mortgage lien as to all parties; and as to the other appellees, against H. H. Davenport & Company and the Panhandle Telephone & Telegraph Company, together with a foreclosure of their mechanics' lien as to all parties. Upon the verdict thus returned the court entered judgment from which the Panhandle Telephone & Telegraph Company and J. E. Nunn have appealed.

*Conclusions.*—1. Section 37 of article XVI of the Constitution of 1876, is as follows: "Mechanics, artisans and material men of every class shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon or materials furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens." This article has been held in effect

to be self-enacting and to be operative as between the owner of the property improved and the one furnishing material for making such improvements. Farmers & Mechanics National Bank of Fort Worth v. Taylor, 91 Texas, 78. It is the contention of appellants that H. H. Davenport & Company occupied the position of contractors, and that therefore, in order to fix a mechanic's lien, the appellees must have complied with the terms of the Mechanics' Liens statutes of this State, which it is admitted they have not done.

On the other hand, it is the contention of these appellees, who had a foreclosure of their mechanics' lien, that H. H. Davenport & Company and the Panhandle Telephone & Telegraph Company were but other names for one and the same individuals, and that at most H. H. Davenport & Company were either the owners of the property which they had .furnished materials to improve, or were the duly authorized agents of the Panhandle Telephone & Telegraph Company, who was the owner, and that in either event they were entitled to their lien under the section of the Constitution above quoted, regardless of a compliance with the terms of the statute giving a lien where the rights of a contractor intervened. We hold with this latter contention. There is nothing in the contract between H. H. Davenport & Company and the corporation to indicate that Davenport & Company was in any manner a contractor with the corporation to repair or otherwise improve the corporation property. The relation is that.rather of vendor and purchaser where by the terms of the contract of sale the vendor is to make certain stipulated improvements of the thing sold. In such a case the authorities appear to hold, and justly we think, that one furnishing material to the vendor is entitled to his lien upon the theory that the vendor is either the owner of the property or at least the authorized agent of the purchaser to make such improvements. Dougherty-Moss Lbr. Co. v. Churchill (Mo.), 90 S. W., 405; Curtin Clark Hdw. Co. v. Churchill (Mo.), 104 S. W., 476; Houston v. Long (Ky.), 23 S. W., 586; Paulsen v. Mauske, 18 N. E., 275; Pope v. Heckscher, 96 N. Y. Supp., 533; York Mfg. Co. v. Brewster, 174 Fed., 566. We are especially strengthened in this view by the unconditional ratification by the Panhandle Telephone & Telegraph Company of the Nunn-Davenport contract. This conclusion, independently of any other consideration, disposes of the major part of appellants' brief covering assignments from one to sixteen inclusive.

2. Next the proposition is asserted that neither the Constitution nor the statutes of this State provide for or authorize the fixing of a mechanic's lien on the property of a public service corporation such as appellant. The section of the Constitution quoted, however, appears to be broad enough to include all buildings, and the exchange, centering as it does, according to the evidence in this case, in the three-story brick building belonging to appellants, is a building within the contemplation of that section, we have no doubt. No reason occurs to us for making an exception in favor of buildings owned by public service corporations, and no case is cited by appellants where such has been done. Some rail-

road cases have been cited where the constitutional lien was denied, not because the railroads were public service corporations, but because they were not buildings.

3.   There are other assignments which affect only the appellee the Kellogg Switchboard & Supply Company.   The point is sought to be made that the Kellogg Switchboard & Supply Company's chattel mortgage lien was inoperative because the property covered by it was so attached to the building in which it was installed as to become a part of the realty and, therefore, not subject to a chattel mortgage.   But the evidence without dispute shows that while the apparatus is .fastened to the floor and ceiling and walls with bolts and screws the same could be taken out and dismantled for shipment leaving the building in practically the same condition as before without in any manner injuring the same. It was furthermore undisputed that in the contract of sale to H. H. Davenport & Company, of which all parties had notice, the property was treated as a chattel and the lien reserved.   Under these circumstances there was no error in foreclosing the chattel mortgage lien.   Willis v. Munger Improved Cotton Machine Mfg. Co., 13 Texas Civ. App., 677 (36 S. W., 1010)'.

4.   The remaining assignments of appellant Panhandle Telephone & Telegraph Company attack appellee the Kellogg Switchboard & Supply Company's right to maintain this suit upon the ground that it was doing business in the State of Texas without a permit.   These assignments can not be sustained. The matter does not arise on the special exception since the petition on its face did not show that appellee company was doing business in Texas in violation of law.   Geiser Mfg. Co. v. Gray, 59 Texas Civ. App., 617.   The petition failing in this respect, the question could only be raised by a plea by the defendant, and such defense was pleaded, but the record is entirely silent as to the appellee's default . in the matter of obtaining a permit to do business in this State.   Under the evidence there was, therefore, no issue in this respect to be submitted to the jury.   Huff v. Kinloch Paint Co., 110 S. W., 467.   We are not at all to be understood as holding that the evidence in this case shows the transaction in controversy to be such a one as is interdicted by statute. On the contrary, we think the case is not ruled by the cases of St. Louis E. M. Fireproofing Co. v. Beilharz, 88 S. W., 512, and Ft. Worth Glass & Sand Co. v. Smythe, 128 S. W., 1136, but rather by the Tennessee cases of Milan Mill. & Mfg. Co. v. Gorten, 27 S. W., 971, and Davis v. Rankin Bldg. & Mfg. Co. v. Caigle, 53 S. W., 240.

5.   As to appellant Nunn's contention that he was entitled to a preference lien as against all the other parties to secure his claim aggregating one hundred thousand dollars as the purchase price of the Amarillo Telephone Exchange, it is sufficient to say that the resolution of the Panhandle Telephone & Telegraph Company creating a lien upon its property to secure him in such amount was conditioned specially that "if the said Panhandle Telephone & Telegraph Company shall well and truly deliver unto the said J. E. Nunn the stocks and bonds above specified,

then this resolution to be null and void," and it is undisputed that such stocks and bonds were duly delivered to Nunn, thereby discharging the lien.

But appellant Nunn is otherwise in no better position than appellant Panhandle Telephone & Telegraph Company because by his own act he has vested in H. H. Davenport & Company the title to his property upon the express understanding that they were to rebuild and otherwise improve it, thereby subjecting it to the lien of material men who furnished the supplies for such improvements.

These conclusions dispose of all assignments adversely to appellants and result in an affirmance of the judgment. Judgment affirmed.

*Affirmed.*

Writ of error refused.