## WARREN et al. v. NORTH AMERICAN CAR CO. (No. 2802.)

Court of Civil Appeals of Texas. Amarillo. March 30, 1927.

Rehearing Denied May 4, 1927.

1. **Appeal and error ⊜⟞174—Defense that plaintiff was foreign corporation without permit to do business held waived on appeal by failure to raise issue in trial court.**

Where defendant failed to plead and prove, as defense in trial court, that plaintiff was foreign corporation violating statute requiring permit to transact business, the defense was waived and could not be raised on appeal.

2. **Account, action on ⊜⟞10—Suit for rental under contract to furnish tank cars held not "action upon open account" provable by submission of verified account (Rev. St. 1925, art. 3736).**

Suit for rental under contract to furnish tank cars *held* not an action founded upon open account which may be proven under Rev. St. 1925, art. 3736, by submission of verified account.

3. **Account, action on ⊜⟞10—In suit for rental of tank cars, account showing amount due held inadmissible without testimony showing correctness, other than verification.**

In suit for rental under contract to furnish tank cars, account showing amount due *held* inadmissible until items thereof had been shown to be correct by testimony other than its verification; such account not being established by affidavit alone.

4. **Account, action on ⊜⟞10—"Account" as used in statute means sales of personal property creating debtor creditor relationship in general course of dealing; "open account" (Rev. St. 1925, art. 3736).**

"Open account" within meaning of Rev. St. 1925, art. 3736, providing for establishment of such accounts by affidavit of party, *held* to apply to transactions in which personal property is sold and relationship of debtor and creditor is created by general course of dealing, and does not apply to isolated transactions resting upon special contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Open Account.]

5. **Carriers ⊜⟞45—In suit for breach of contract, correctness of account, which did not establish cause of action by verification alone, held for jury.**

In suit for breach of contract to furnish tank cars, correctness of account, showing amount due under contract, *held* for jury; the account not establishing cause of action by verification alone.

6. **Evidence ⊜⟞376(1)—Books introduced in evidence must be original, correct, made in regular course of business by one properly authorized, and must show nature of transaction.**

To authorize introduction of book accounts in evidence, it must be proved that books were original, and regularly and correctly kept, and that entries were made in regular course of business by one authorized to do so, and that entries indicate what charge is for.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by the North American Car Company against J. J. Lory, F. P. Warren, and others. J. J. Lory having died, the case was dismissed as to him in the trial court. From a judgment for plaintiff, F. P. Warren and others appeal. Reversed, as to defendants appealing, and remanded.

Weeks, Morrow, Francis & Hankerson, and J. S. Dickey, all of Wichita Falls, and Thompson, Knight, Baker & Harris, of Dallas, for appellants.

Louis W. Pratt, of Tulsa, Okl., and Kilgore, Rogers, Montgomery & Carrigan, of Wichita Falls, for appellee.

RANDOLPH, J. This suit was instituted by the appellee, North American Car Company, against J. J. Lory and a number of others, who were alleged to be shareholders in the Ranger-Wichita Oil & Refining Company, a joint-stock association, to recover approximately $12,000 alleged to be due under a contract for rental of tank cars made between appellee and the association. J. J. Lory having died, as to him the case was dismissed in the trial court.

The case went to trial, and judgment was rendered by the trial court against certain of the defendants, the character of which judgment will appear later. From that judgment certain of the defendants have appealed to this court.

[1] The first question presented by appellants as error on the part of the trial court is:

"It appearing from the pleadings and evidence that the appellee is a foreign corporation, and that its business consists of the rental of tank cars which it contracts to keep in condition and to repair, and it further appearing that it was engaged in business in Texas in that it caused a part of its business to be here conducted by causing cars to be repaired in Texas, and, there being neither pleading nor proof that

said company has a permit to do business within the state of Texas, this cause should have been dismissed."

The plaintiff in its petition does not disclose that it is a foreign corporation; the only allegation being that "it is a corporation duly and legally incorporated." Neither does the petition on its face disclose that it was transacting business in the state of Texas. The appellants raise this question in their motion for new trial filed in the trial court and present it to this court by proper assignment and proposition. The petition not alleging that appellee was a foreign corporation, and not alleging that it was engaged in a transaction which upon its face would constitute doing business in this state, the question presented by appellants' proposition is not before us, for the following reason: The petition only alleging that the plaintiff was duly and legally incorporated, and the petition not disclosing the fact that plaintiff was transacting business in Texas, it devolved on the defendants to plead and prove as a defense to this action that the plaintiff was a foreign corporation and that it was transacting business in Texas in violation of the statute requiring it to take out a permit to transact such business. Not having done so, the defendants waived such defense and cannot now raise the question in this court. Panhandle Tel. & Tel. Co. v. Kellogg Switchboard & Supply Co., 62 Tex. Civ. App. 402, 132 S. W. 963, 966 (writ denied); Texas Packing Co. v. St. Louis S. W. Ry. Co. (Tex. Com. App.) 227 S. W. 1095; Oklahoma Tool & Supply Co. v. Daniels (Tex. Com. App.) 290 S. W. 727.

[2] Appellants' second proposition sets out as error the following:

"It appearing from appellee's petition and from the undisputed evidence that the alleged cause of action of appellee is a breach of the written contract made between itself and the Ranger-Wichita Oil & Refining Company, a joint-stock association, for the lease of tank cars and not for the sale of personal property, and is not of a nature which is provable by a sworn account, the trial court erred in holding that, there being attached to the petition an alleged account which was sworn to and not denied under oath, no issue was raised by the evidence, but appellee was entitled to a judgment on the sworn account."

The plaintiff's cause of action was a suit for damages occasioned plaintiff by the defendant's breach of the written contract above mentioned, which damages are alleged to have been caused the plaintiff by the failure of the defendants to pay the consideration as stipulated in said contract. The account attached to the plaintiff's petition set out in detail the items upon which payment had not been made, and was duly sworn to. This account being offered in evidence and the defendants having objected to the introduction of same before the jury for the rea-

son that this is not a suit based upon an account which, under the statute, proves itself by being sworn to, but is a suit for breach of contract and the resulting damages cannot be proved as if the suit was upon an open verified account.

Over appellants' objection, the trial court admitted the account in evidence, which action of the court was duly excepted to by the defendants. It further appears from the record that the trial court sustained a motion made by the plaintiff for peremptory instruction of a verdict, and did instruct the jury to bring in a verdict for the plaintiff against named defendants and in favor of the plaintiff for $12,049.78, with interest, and the jury thereupon returned such verdict into court.

The contract sued upon is as follows:

"This agreement, made and entered into this 3d day of May, A. D. 1921, by and between the North American Car Company, a corporation organized and existing under and by virtue of the laws of the state of West Virginia, having its principal office in Chicago, Ill., party of the first part, and Ranger-Wichita Oil & Refining Company, of Wichita Falls, Tex., party of the second part, witnesseth:

"First. Party of the first part agrees to furnish to party of the second part fifty (50) steel underframe tank cars of approximately eight thousand (8,000) gallons capacity each, which cars are to be used by party of the second part exclusively in its service for the transportation of petroleum and kindred products, and which cars are, for identification, initialed and marked as follows: (Initials and numbers to be inserted later.) NATX 104, 200, 229, 240, 252. 290, 333, 353, 356, 364, 378, 573, 577, 580, 752, 753, 758, 761, 762, 787, 789, 792, 793, 815, 858, 872, 873, 879, 920, 936, 937, 939; COMX 650, 653, 654. 656, 657, 658, 659, 670, 676, 677; NTCX 2203, 2211, 2213, 2300, 2307, 2332, 2337, and 2342.

"Second. Party of the first part agrees to deliver said cars at Coffeyville, Kan., on or before June 1st, 1921, contingent upon ordinary freight train movement by railroads, destruction or damages by wrecks, fire or otherwise, or delay by strikes or other causes beyond the control of party of the first part, and party of the second part agrees to accept delivery of said cars and pay the service rate thereon hereinafter provided for, from and after date of billing, and until said cars are returned to party of the first part at Coffeyville, Kan., free from all charges and liens, at the expiration of this lease.

"Third. Party of the second part agrees to pay to party of the first part the sum of thirty-five dollars ($35.00) per car per month for the use of said cars, and said monthly payments shall be made in advance to party of the first part at Chicago, Ill.

"Fourth. Party of the first part is to collect all mileage earned by said cars and to keep all records pertaining to their movement; but party of the second part agrees to assist party of the first part in following the movement of said cars by reporting each movement on blanks furnished for the purpose, giving date, destination, and routing of cars loaded, also all information which party of the second part may receive from railroad companies or any other

sources which may be of use to party of the first part in keeping an accurate record of the movement of said cars.

"Fifth. Party of the second part agrees to give to each railroad over which the cars move a loaded mileage equal to the empty mileage in accordance with railroad tariff rulings, and, failing in this, agrees to reimburse party of the first part at the expiration of this lease the rate per mile established by the railroads over which such excess was incurred.

"Sixth. Party of the first part agrees to maintain said cars in accordance with present requirements of railroad companies and existing M. C. B. rules, but shall not be liable for any damage arising from the use of said cars for the transportation or storage of any commodity. If any damage is caused to said cars while on the private tracks of party of the second part, or on any private track, or should said cars be injured in any way due to the deleterious action of any commodity which may be transported or stored in said cars, party of the second part shall pay to party of the first part the cost of making such repairs, renewals, or replacements as necessary to place said cars in as good condition as when received by party of the second part, ordinary wear and tear excepted. Party of the second part shall replace any appliance or removable tank part (dome lids, outlet caps, coils, etc.) if destroyed, lost, removed, or stolen, or reimburse party of the first part for the cost of replacing such parts or appliances in case of destruction, loss, removal, or theft.

"Seventh. This agreement is to remain in full force and effect until one year from the date of average delivery, and party of the second part agrees to return said cars to party of the first part at the expiration of this lease, as hereinbefore provided, in the same or as good condition, order, and repair as received, and with all and the same kind and character of devices, appliances, or appurtenances with which said cars were equipped at time of delivery to party of the second part, tanks to be returned free from all accumulations or deposits from commodities transported or stored in said tanks while in the service of party of the second part.

"Eighth. Party of the second part agrees not to load said cars in excess of the stenciled capacity, and assumes all responsibility for damage resulting from loading beyond same in case such instructions are not carried out by shippers.

"Ninth. It is agreed that, if either of the parties hereto fails to perform any of the covenants or agreements herein stated, the other party may terminate this contract immediately.

"Tenth. This agreement shall be binding upon the parties hereto, their successors, administrators, representatives, and executors, and shall not be assignable by party of the second part without the written consent of party of the first part.

"Eleventh. It is expressly understood and agreed that this is a contract of leasing only, and that party of the second part does not and shall not thereby acquire any right, title, or interest, except the right to the possession of said cars as lessee during the term of this lease.

"Twelfth. Party of the first part shall report monthly to party of the second part all mileage earned by said cars while in the service of party of the second part and credit shall be given to said party of the second part for such mileage earnings as paid for by railroads to party of the first part.

"In witness whereof, the parties hereto have caused this instrument to be executed in two counterparts (each of which shall be deemed an original) by their respective duly authorized officers and attested by their secretaries, and their respective corporate seals to be hereunto affixed, the day and year first above written. North American Car Company, [Signed] H. H. Brigham, President. Attest: M. F. Russell, Secretary. [Corporate Seal.] Ranger-Wichita Oil & Refining Company, [Signed] J. F. Reid, Vice President. [Signed] F. T. Brelsford, Secretary. [Seal.]"

[3] As stated above, the account set out in detail the rental items claimed by plaintiff to have been incurred under such contract, and which had not been paid by the defendants, including excess empty mileage. This account, not being established by the affidavit attached to it, was not admissible in evidence until the items thereof had been shown to be correct by testimony other than its verification.

Article 3736, Revised Civil Statutes of Texas 1925, provides:

"When any action or defense is founded upon an open account, supported by the affidavit of the party, his agent or attorney, taken before some officer authorized to administer oaths, to the effect that such account is, within the knowledge of affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed, the same shall be taken as prima facie evidence thereof, unless the party resisting such claim shall, before an announcement of ready for trial in said cause, file a written denial, under oath, stating that such account is not just or true, in whole or in part, and if in part only, stating the items and particulars which are unjust; provided, that when such counter affidavit shall be filed on the day of the trial, the party claiming under such verified account shall have the right to continue such cause until the next term of court; when he fails to file such affidavit, he shall not be permitted to deny the account, or any item therein as the case may be."

[4] The article above quoted applying only to "open accounts," the question here presented is: Was the account offered in evidence such an account as comes within the meaning of the term so used in said article?

It was said in the case of McCamant v. Batsell, 59 Tex. 363, 367:

"As used in the statutes of this state, in act referred to, we believe that the word 'account' is used in its popular sense, rather than in a technical sense, and that it applies to transactions between persons in which, by sale upon the one side and purchase upon the other, the title to personal property passes from the one to the other, and the relation of debtor and creditor is thereby created by general course of dealing; and that it does not mean one or more isolated transactions resting upon special contract.

"This construction is indicated to be the true one by article 3204, R. S., which provides that, 'in all accounts, except those between merchant and merchant, as aforesaid, their factors and agents, the respective times or dates of the delivery of the several articles charged shall be particularly specified, and limitation shall run against each item from the date of such delivery, unless otherwise specially contracted.'"

See, also, Oden & Co. v. Vaughn Grocery Co., 34 Tex. Civ. App. 115, 77 S. W. 967; Gerlach-Barlow Co. v. Patton (Tex. Civ. App.) 281 S. W. 242, and authorities therein cited.

[5] The verified account not being admissible to establish the plaintiff's cause of action, the trial court erred in instructing a verdict, at all events. The correctness of the account was an issue to be determined by the jury, and should have been submitted to them. If there was evidence to warrant a verdict for the plaintiff, the jury should have returned the verdict and not the court.

"In order to lay a foundation for the admission of entries by clerks and third persons in the regular course of business, the facts required by law as requisites to admissibility must be established. Thus the connection of the entries with the subject-matter of the controversy must be shown. There must be evidence showing the correctness of the entry and when it was made." 22 C. J. p. 886.

This being the rule, whether or not the correctness of the entry charged against defendants was established was a matter for the determination of the jury, as stated above.

[6] Appellants' third proposition raises the question:

"That, it appearing that the appellee, instead of relying entirely upon the alleged sworn account, undertook to prove the same by showing the book entries of the appellee at Chicago, its home office, and to this end offered the testimony of Gustave A. Johnson, an auditor, and it appearing that, in order to ascertain the amount due under the contract, it became necessary to ascertain the amount of the mileage earned by the cars while they moved loaded over the various railroads of the country, Gustave A. Johnson, with regard to said items, testified solely from the data that was furnished him, and that the correctness of such data so furnished him by the various railroads was in no wise testified to by any witness familiar with the truth thereof, it thus appears that such testimony was inadmissible as hearsay."

By other assignments and propositions, the questions kindred to the above were raised as follows: That such judgment was clearly erroneous as to an item of $3,001.04, excess empty mileage, the only evidence of which consists of certain book entries from the books of the North American Car Company made up from the memoranda furnished by various and sundry railroads with respect to the correctness of which no testimony was offered. That, in a suit upon a written contract for money due thereunder for breach thereof, the book entries of the appellee were not admissible as proof of the amounts due, even assuming said book entries to be correct and properly testified to. That, in order to establish the account, the appellee offered the testimony of Gustave A. Johnson, who testified that there were eight bookkeepers in the office at Chicago, of which he was auditor, but who failed to show whether the items testified to were from the books of original entries or secondary entries —his testimony thereto was not admissible. That it appears from the testimony of said witness that the books with reference to which he was testifying were made up largely from "junction reports" furnished the car company by the various railroad companies, and, inasmuch as no witness testified to the correctness of these "junction reports," and inasmuch as said witness failed to testify that the other books with which he was dealing were books of original entry, and inasmuch as the witness failed to testify that they were, within his knowledge, correct, and because this is a suit involving the breach of a contract for damages growing out of same, the mere introduction of book entries of appellee carried no probative force, and appellants' objections should have been sustained.

It will be seen from the contract sued on and set out above that it provides for the appellee to report to appellants all mileage earned by the tank cars while in service of appellants, and that credit should be given to appellants for such mileage earnings as paid to the railroads by the appellee, and that appellee is to collect all mileage earned by said cars and to keep all records pertaining to their movements, with the assistance of appellants, and, further, that appellants agree to give to each railroad on which the cars move loaded mileage equal to the empty mileage in accordance with railway traffic ruling, and, failing in this, appellants agree to reimburse appellee at the expiration of this lease the rate per mile established by the railroads over which such excess was incurred. But there is no provision in the contract that the records so kept shall be accepted by defendants as proof of the transactions recorded; neither is there any stipulation that reports furnished the appellee by the railroad companies shall be accepted by defendants as proof of the transactions therein noted.

The witness Gustave A. Johnson testified in part as follows:

"I am auditor of the North American Car Company, and have been since April 1, 1915. Since May 1, 1921, I have had charge of the accounts between the North American Car Company and the Ranger-Wichita Oil & Refining Company, growing out of a certain lease of tank cars which has been identified by Mr. Henry H. Brigham. The manner in which these

accounts were kept is as follows: The contract running between the Ranger-Wichita Oil & Refining Company and the North American Car Company specified the rental price and bills were rendered monthly in advance the 1st day of each month for 50 cars at $35 per car per month. The other charges and credits were made or allowed upon the movements of the cars empty or loaded, as their movements were reported by the railroads to us. These reports come to us 30 to 90 days after the movements of the cars. The reports come to us from the railroads on slips called 'junction reports,' which are recorded in our mileage records; a record being kept of the movements of each individual car. Credit memoranda, accompanied by detailed statements showing how the amount of credit given is arrived at, are sent monthly to the lessee for mileage earnings. Whenever a car was out of service for repairs, we credited the lessee with the rental for the idle period. This is not the general practice of tank car companies, nor is it provided for in the lease, but we have made the practice of allowing lessees credit for the full rental accruing during any period more than ten days that a car is out of service on account of bad order. The Ranger-Wichita Oil & Refining Company has been credited with all mileage earnings and rentals for cars out of service on account of bad order, and charged with excess empty mileage in accordance with the terms of the contract."

The witness identified certain statements and junction reports offered in evidence in connection with and as a part of statement Exhibit W1B to his depositions.

The items of account testified to covered the rentals and mileage earnings for cars for the period beginning August, 1921, and to May, 1922, inclusive, as shown by Exhibit W1, introduced in evidence. There is no evidence that the plaintiff paid the railroad companies the excess empty mileage which it charged to defendants.

"To authorize the introduction of book accounts in evidence it must be proved: (1) That the book or books contained original entries of transactions pertinent to the business in question. (2) It must appear that the entries were made in the regular course of business at or near to the time the transactions were had. (3) That the entries must be such as to indicate what the charge is for; that is, what the transaction was. (4) That the entries were made by one who was authorized to do so, and that he did the act so recorded himself, or that he made the record upon information derived from one who was authorized to do so. (5) That the transactions were regularly entered and that the books were correctly kept. 17 Cyc. p. 371 et seq.; Taylor v. Coleman, 20 Tex. 778; Ward v. Wheeler, 18 Tex. 264; Burnham v. Chandler, 15 Tex. 444; Bupp & Robbins v. O'Connor, 1 Tex. Civ. App. 328 [21 S. W. 619]. The evidence did not comply with these requirements." Stark v. Burkitt, 103 Tex. 437, 129 S. W. 343.

See, also, 22 C. J. p. 887, § 1076; Freund v. Hanson's Sons, Inc. (Tex. Civ. App.) 215 S. W. 151; Locke v. Wallingford (Tex. Civ. App.) 265 S. W. 1086; 22 C. J. p. 888, § 1082.

Because of the failure of appellee to comply with the rules above laid down, the trial court should have sustained appellants' objections and excluded the testimony offered by appellee to establish the account.

On account of the errors discussed, the judgment of the trial court as against the defendants appealing therefrom is reversed and remanded for a new trial.