## TEXAS POWER & LIGHT CO. v. MALONE et al.

### No. 3659.

Court of Civil Appeals of Texas. Amarillo.

Oct. 14, 1931.

Rehearing Denied Nov. 4, 1931.

Williams & Day, of Plainview, for appellant.

J. M. Harris, of Snyder, for appellee M. A. Fuller.

HALL, C. J.

The appellant light company sued appellee Charles A. Malone, to recover the principal, interest, and attorneys' fees due upon a note executed by Malone to appellant July 24, 1928, in the sum of $6,750, payable in three equal annual installments on September 1, 1929, 1930, and 1931, respectively. Plaintiff also sought to foreclose a chattel mortgage executed on the same day for the purpose of securing the payment of said note and covering one De Lavergne Diesel oil engine, one electric alternator, two centrifugal pumps, one generator switchboard panel, together with connections, etc., and also a one-story, steel-frame galvanized iron clad building about 43x47 feet.

C. R. Spann, Guy Jacobs, Rufus Wright, M. A. Fuller, and the Plainview National Bank were all made parties defendant because, as alleged, they were claiming some interest or right in and to the mortgaged property.

Plaintiff further alleged that, since the execution and delivery of the chattel mortgage, the above-described property had been placed on section 4, block S–1, Hale county, Tex., by Malone, who had erected the galvanized house on said land and placed the engine and other property therein and thereabout. Plaintiff prayed that it recover the amount due upon the note, that its chattel mortgage lien be foreclosed upon all of the property described therein, that said property be removed from the land to which it had been attached, and for order of sale and general relief.

Malone, Spann, and Jacob defaulted.

The defendant Wright answered, setting up a judgment lien upon the land in his favor.

Fuller answered that on September 19, 1930, Malone executed a deed of trust to O. P.

Thrane, conveying said section 4, block S-1, together with another section of land, to secure the payment of his note in the sum of $17,276.80, and alleged that the property and machinery described in plaintiff's petition had theretofore been affixed to said real estate in such manner as to be a part and parcel thereof; that it was attached to and located upon the realty in a permanent and stable manner, with the purpose and intention of making it a permanent fixture, and that the defendant had neither actual nor constructive knowledge of the lien claimed by the plaintiff; that plaintiff's mortgage was not indorsed nor was it filed as required by article 5498, Revised Statutes of Texas; that it did not describe the land upon which the machinery was located; and that defendant had no constructive notice of plaintiff's right, and was therefore a lienholder in good faith.

He further alleged that he was the owner and holder in due course of a deed of trust conveying said land, executed by Malone and wife November 1, 1927, for the purpose of securing the payment of a note in the sum of $25,000, payable to the Bankers' Life Company, the balance of said note, viz. $23,750.00, with interest, having been assigned to him, together with the deed of trust lien securing the same; that a judgment had been rendered in the district court of Hale county, foreclosing said lien and ordering a sale of the land in satisfaction thereof; that both liens set up in his answer were valid and subsisting liens against the real estate and both had been foreclosed, and, because of plaintiff's failure to comply with the provisions of R. S. art. 5498, plaintiff had acquired no lien on said machinery and equipment or on the real estate; and that both of defendant's liens were superior to any right or claim asserted by plaintiff.

The Plainview National Bank answered by general demurrer, several special exceptions, a general denial, and for special answer alleged that on the 19th day of September, 1930, Malone and wife executed and delivered to the First National Bank of Plainview a note in the sum of $17,150, payable to said bank thirty days after its date, secured by a deed of trust lien on section 4 and other property, which said note is unpaid and has been transferred to the defendant Plainview National Bank, which is now the legal and equitable owner and holder of said note; that the same has been reduced to judgment and the lien foreclosed in cause No. 3380, pending in the district court of Hale county; that the engine and other personal property described in plaintiff's petition had been attached to and was a part of said section 4, and had been so attached prior to and ever since the execution of the deed of trust, and the defendant had not at any time had either actual or constructive notice of the rights claimed by the plaintiff.

The case was tried to the court without a jury and resulted in a judgment that appellant power and light company have judgment against Malone in the sum of $8,726.60, with 7 per cent. interest and costs of suit; that it take nothing as against the other defendants in said cause, and be denied a foreclosure of its purported chattel mortgage lien on the engine and other property as against any of the defendants; that the claims and liens of the defendants Fuller, Wright, and the bank are superior to the plaintiff's claimed lien for the reason, as recited in the judgment, that said property had become affixed to the real property so as to be a part thereof.

The findings of fact and conclusions of law filed by the court are, in substance, as follows: (1) That on July 24, 1928, and for several years prior thereto, Charles A. Malone was the owner in fee simple of sections 4 and 5 in block S-1 in Hale county. (2) That on Nov. 1, 1927, Malone and wife executed to G. W. Fowler, trustee, a deed of trust to secure the payment of a note in the sum of $25,000, which had been duly recorded and which constituted a valid and subsisting lien to secure the payment of said note. (3) That Rufus Wright had a valid and subsisting judgment lien upon said sections of land evidenced by an abstract of judgment filed on June 29, 1928, to secure the payment of $445 and interest. (4) That about the 24th day of July, 1928, the plaintiff Texas Power & Light Company sold to Malone the machinery described in plaintiff's petition and before said machinery was placed on the premises Malone executed to the power and light company a chattel mortgage which had been duly filed with the county clerk and which was indexed in the chattel mortgage records of Hale county; that said mortgage was executed for the purpose of securing the payment of the note sued upon and described in plaintiff's petition; that said note is unpaid. (5) That the engine and other machinery and equipment so sold to said Malone was susceptible of being attached to real estate; that it was of such a nature that in its proper use it was contemplated that same should be attached to real estate; that immediately after said machinery came into his possession Malone proceeded to fasten and attach all of said machinery and equipment, as well as said building, to the real estate with the intention and in such a way and manner so that all of said machinery, equipment, and building became affixed to and a part of the real estate to which it was attached. (6) The court further finds that the chattel mortgage given to the power and light company and covering said machinery and house did not describe or attempt to describe the real estate to which the same was to be attached; that the mortgage was not indorsed as required by article 5498, and was not indexed and registered in a separate book entitled "Chattel Mortgage

Records on Realty," as required by said article of the statute. The court further finds: (7) That on September 19, 1930, Malone and wife executed and delivered a valid deed of trust to O. P. Thrane as trustee for the purpose of securing the payment of one note in the sum of $17,276.80, payable to M. A. Fuller, which deed of trust had been duly recorded in the deed of trust records of Hale county. (8) That on or about September 30, 1930, for valuable consideration, Fuller purchased the note held by the Bankers' Life Company above described, and he thereupon became the legal owner and holder thereof, together with the deed of trust lien securing the same. (9) That on the 20th day of September, 1930, Malone and wife executed a valid deed of trust conveying to Guy Jacobs as trustee the above-described lands for the purpose of securing the payment to the First National Bank of Plainview, one note in the sum of $17,150, and that thereafter said note and lien had been duly transferred to the Plainview National Bank, which said bank is now the legal owner and holder thereof. (10) That said lien so securing said note is subject to the liens in favor of Fuller and Rufus Wright. (11) That Fuller has heretofore filed a suit in the district court of Hale county upon his two notes above described, making Rufus Wright and the Plainview National Bank additional parties defendant; that in said suit judgment has been rendered in favor of Fuller against Malone for the total sum of $48,674.45, directing a foreclosure of the liens held by Fuller, ordering the lands to be sold and the proceeds applied first to the payment of Fuller's debt, next to the payment of Wright, and the balance, if any, to the Plainview National Bank. (12) That the Plainview National Bank had filed a suit and foreclosed its lien upon the land in question, subject to the right of Fuller and Rufus Wright.

The court concludes as a matter of law that the mortgage filed by the power and light company was not legal notice to any one because of the failure of plaintiff to comply with the provisions of R. S. art. 5498. The court further concludes that Fuller, Wright, and the Plainview National Bank have an interest in said real estate superior to any claim asserted by the Texas Power & Light Company and because the machinery, equipment, and building have become a part of the real estate, the power and light company was not entitled to sever the same from the soil by virtue of its chattel mortgage lien.

It is conceded that the appellant's mortgage does not comply with the requirements of R. S. art. 5498, either in substance or in the matter of its indorsement and registration. That article is therefore inapplicable to the controversy. The rights of the parties are governed in part by R. S. art. 5490, which provides that chattel mortgages upon personal property shall be absolutely void as against the creditors of the mortgagor or person making same and also against subsequent purchasers and mortgagees or lienholders in good faith unless duly filed for registration. From the foregoing findings of fact it will be seen that appellant's chattel mortgage upon the machinery was dated July 24, 1928. Prior thereto, on November 1, 1927, Malone and wife had executed a deed of trust to secure their indebtedness to the Bankers' Life Company in the sum of $25,000. This deed of trust covered the land upon which the machinery was placed by Malone a few weeks after he executed the trust deed.

■■ The appellant attacks the fifth finding of fact by the court to the effect that the engine and other machinery sold to Malone was of such a nature in its proper use it was contemplated that same should be attached to real estate and that immediately after it came into Malone's possession he attached the machinery and building to the real estate with the intention that all of the machinery, equipment, and building should become a part of the real estate, and that it was a part thereof.

The only testimony in the record bearing upon this issue was elicited from Malone, who testified that he supervised the installation of the machinery on section 4; that the engine is on a concrete foundation 12 feet wide, 9 feet deep, and 22 feet long; that it is fastened to the foundation with heavy bolts set in the concrete; that when the engine was set on the foundation it was with a view of permanent use and that he put it there with the intention of making it a permanent fixture; that the one-story, steel-frame, galvanized iron clad building approximately 43x47 feet located on the same section as the engine, and housing it, is fastened to the ground by a concrete foundation about 2 feet in the ground, and that the building is fastened to the foundation by bolts; that the building is 16 feet high, has a solid concrete floor, flush with the foundation for the engine; that the building was put there with the idea of making it permanent; that the alternator, exciter, and dynamo are upon the same foundation and directly connected with the engine and on the same foundation with it, fastened to it with bolts; that the pumps are on separate concrete foundations and fastened to the ground, bolted down like the engine, and are connected with the engine by pipes; that the generator switchboard is fastened to the building by means of steel bolts; that he placed the machinery and building there as a permanent fixture, and that was his intention at the time he placed it; that it had been used in connection with the real estate as an irrigation proposition, using it as a power plant for generating electricity to operate the pumps.

We sustain this contention and hold that

the evidence does not sustain the court in the conclusion reached that the machinery had become a part of the realty as between the parties to the contract.

The mortgage upon the machinery provides that upon default by Malone in payment of said note, "said mortgagee or its assigns, agents or representatives are hereby authorized at their option to declare all said note due and take actual possession of said property and to sell the same at public auction for cash at the courthouse door in Hale County, Texas, with or without having possession of said property present at said sale after having given notice of the time, place and terms of said sale as the law now requires for sales of property under execution."

As stated, this mortgage was executed by Malone about a month before the property was unloaded and moved to the premises where he placed it upon the foundation. The above-quoted stipulation is inconsistent with the contention that the parties intended that the machinery should become a part of the realty until fully paid for. The appellant could not take possession of the property and sell it at public auction at the courthouse door having the property present at such sale unless it was intended by the parties that the property should retain its character as personalty. The fact that Malone testified that it was his intention that the machinery and building should become a permanent fixture, is immaterial, as was decided by this court in Southwestern Public Service Co. v. Smith, 31 S.W.(2d) 472, 473.

As said in that case: "Inasmuch as the conditional sales contract executed by the defendant Smith and appellant for the purchase and sale of the refrigeration equipment provided that title should not pass to Smith and the property should remain chattels until the purchase price therefor was fully paid, the intention of the parties manifestly was that the property should remain chattels, and, notwithstanding Smith testified on the trial of this case that it was installed as a permanent arrangement for use in connection with the building, this does not contravene the original intention of the parties that, until paid for, the title should not pass from appellant and the property should remain chattels." Citing Murray Co. v. Simmons (Tex. Com. App.) 229 S. W. 461.

■ The several machines, according to the testimony, still retain their distinctive character, although bolted to the foundations prepared for them. Unlike bricks, mortar, and lumber, built into a structure of any kind, they have not lost their specific character. There is no testimony showing that the building and the machinery could not all be moved without seriously injuring the section of land upon which they are located, nor is it shown that their removal would lessen the value of

the land as security as it existed before the installation. It is true that the concrete foundations originally intended for the installation of an irrigation plant might still remain, but, in the absence of testimony to the contrary, we must presume that their presence would enhance the value of the land at least for irrigation purposes. The preponderance of authority is to the effect that, where the removal of such fixtures will not materially injure the premises, the seller and mortgagee may assert his right as against a prior mortgagee of the premises.

■ In accordance with the general rule, the record of appellant's chattel mortgage is not notice to any purchaser or subsequent mortgagee of the real estate upon which the machinery was situated. A prior mortgagee of the premises, of course, occupies no advantageous position such as may be held by a bona fide purchaser or subsequent mortgagee in good faith without notice of the chattel mortgage, and he cannot complain unless the removal of the improvements would materially injure the property and lessen the value of his security. Willis v. Munger Imp. Cotton Mach. Mfg. Co., 13 Tex. Civ. App. 677, 36 S. W. 1010; Panhandle Tel. & T. Co. v. Kellogg Switchboard & Supply Co., 62 Tex. Civ. App. 402, 132 S. W. 963; Harkey v. Cain, 69 Tex. 146, 6 S. W. 637; Williamson v. Pye (Tex. Civ. App.) 18 S.W.(2d) 707; Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W. (2d) 1052; David v. Roe (Tex. Civ. App.) 271 S.W. 196; Murray Co. v. Simmons (Tex. Com. App.) 229 S. W. 461; Hutchins v. Masterson & Street, 46 Tex. 551, 26 Am. Rep. 286; Reader v. Christian (Tex. Civ. App.) 234 S. W. 155.

It is held that the giving of a chattel mortgage on articles before their annexation to the land of the mortgagor is equivalent to an agreement by him that they shall remain personalty for the purpose of the mortgage. 26 C. J. 678, § 41b.

We think the court erred in failing to foreclose the appellant's lien upon the machinery as against Malone and Spann.

■■ The only remaining contentions necessary to be considered are as to the rights of Fuller as a junior mortgagee against the property and the further contention on the part of the appellant that the burden of proof to show that Fuller was a subsequent lienholder in good faith rested upon him. Since appellant's mortgage does not comply with the requirements of article 5498, its registration upon the chattel mortgage records was not constructive notice to Fuller of appellant's claim, and, unless Fuller had actual notice of the existence of the mortgage, his deed of trust, executed September 19, 1930, is entitled to priority. This is also true with reference to the deed of trust given by Malone and wife to Jacob, as trustee for the First National Bank of Plainview. Citizens' Nation-

al Bank of Abilene v. Elk Mfg. Co. (Tex. Com. App.) 29 S.W.(2d) 1062. We sustain appellant's contention to the effect that the burden of proof rested upon these subsequent mortgagees to show that they acquired their liens upon the land in good faith. Fuller alleged that he was a mortgagee in good faith, but offered no proof whatever to sustain his allegation. The bank made no such allegation.

In the late case of Lindig v. Johnson City State Bank (Tex. Com. App.) 41 S.W.(2d) 222, Judge Ryan discusses the relative rights of prior and junior mortgagees in cases like this and holds that the burden of proof rests upon the junior mortgagee to show facts which would give it precedence over the prior unrecorded mortgage. The discussion makes clear the law applicable to such cases, and for the sake of brevity we refer to the opinion as controlling the rights of the parties in this suit upon another trial. Since neither Fuller nor the bank sought to discharge the burden resting upon them to show that they were mortgagees in good faith and since there was no evidence that they were holders for valuable consideration without notice of the previous chattel mortgage, the judgment is without evidence to support it.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded.